Bobbie L. **MORELAND** and Elizabeth K. Moreland, Petitioners,

v.

**MARWICH, LTD., Respondent.**

No. 81SC111.

Supreme Court of Colorado,
En Banc.

June 13, 1983.

Reckseen & Lau, P.C., Joel Judd, Northglenn, for petitioners.

David A. Senseney, Englewood, for respondent.

LOHR, Justice.

We are required in this case to determine whether the Adams County District Court erred in allowing the petitioners additional time to redeem their property from two public trustee foreclosure sales after the statutory time for redemption had expired and public trustee's deeds had been issued. The Colorado Court of Appeals reversed the trial court's order extending the redemption time, and we granted certiorari to review the appellate court's decision, *Moreland v. Marwich, Ltd.,* 629 P.2d 1095 (Colo.App. 1981). We conclude that the district court acted within its discretion in allowing additional time for redemption; therefore, we reverse the judgment of the court of appeals and direct that the trial court's judgment be reinstated.

## I.

The facts relevant to the propriety of the trial court's order are not in dispute. On December 22, 1978, the petitioners, Bobbie L. and Elizabeth K. Moreland, executed two deeds of trust on their residence to secure three outstanding promissory notes payable to the Platte Valley Bank (the bank). The Morelands did not make certain payments prescribed in the notes, and the bank commenced proceedings to foreclose the deeds of trust through the public trustee. *See* section 38–37–113, C.R.S.1973 (1982 Repl. Vol. 16A). In addition, the bank filed two motions in separate actions in Adams County District Court under C.R.C.P. 120 seeking orders authorizing sales of the encumbered property under the powers of sale contained in the deeds of trust. *See also* section 38–37–140, C.R.S.1973 (1982 Repl.Vol. 16A). Bobbie Moreland filed a response to the C.R.C.P. 120 motions.[1] He alleged, among other things, that he owned an auto sales business and obtained loans from the bank, secured by liens on vehicles, to operate that business. The bank demanded further security for the loans and offered to accept a lien on the Morelands' house for that purpose. According to Moreland, the bank represented that if the additional security were furnished the bank would convert the loans to a ten-year note to be amortized by monthly payments. After the Morelands had encumbered their residence by the deeds of trust, the response continued, the bank refused to convert the loans to a ten-year note as promised.

The district court held a single hearing on the C.R.C.P. 120 motions. At that hearing, the Morelands sought to offer evidence that, even though they were concededly in arrears in payments on the schedule prescribed in the promissory notes, the bank had breached its alleged agreement to convert the notes to a ten-year amortized loan.[2]

---

1. Although Moreland filed only one response, the C.R.C.P. 120 court allowed it to be considered applicable to both motions.

2. Moreland's response sets forth his alleged agreement with the bank and requests that the

district court "reform the note" to change it into the promised long-term obligation. Implicit in this theory is the conclusion that the Morelands would not be in default under the terms of the note as reformed. However, at the C.R.

The district court declined to hear evidence of an oral agreement, ruling that the only questions cognizable in the hearing under C.R.C.P. 120 were whether the Morelands were in default under the loan terms as gleaned from the faces of the notes secured by the deeds of trust and whether they had defenses under the Soldiers' and Sailors' Civil Relief Act of 1940. Since there was no dispute as to these two matters, the court issued orders of sale permitting the public trustee sale proceedings to go forward. The C.R.C.P. 120 court stayed execution of that order for ten days, however, to permit the Morelands to seek injunctive or other relief in a separate action pursuant to C.R.C.P. 120(d).

The Morelands did not file an independent action while the stay order was in effect. The stay expired, the public trustee foreclosure proceedings went forward, and the bank brought the property at the foreclosure sales for $20,302.58, the total of the principal owed on the notes, plus interest and attorneys' fees. The petitioners did not redeem from the foreclosure sales within the 75-day period allowed by statute. See section 38–39–102, C.R.S.1973 (1982 Repl. Vol. 16A). Thereafter, Marwich, Ltd. (Marwich), which had acquired by assignment a judgment lien junior to the bank's deeds of trust, exercised its redemption rights by paying $20,773.58, the amount paid by the bank plus interest. See section 38–39–103, C.R.S.1973 (1982 Repl.Vol. 16A). The public trustee then issued deeds conveying the Morelands' residence property to Marwich.

After Marwich had received the public trustee's deeds, it brought an action in unlawful detainer in the County Court for Adams County against the Morelands, seeking possession of the newly-acquired property. The petitioners then commenced the present action in Adams County District Court, and the case was assigned to a judge other than the one who had presided at the previous C.R.C.P. 120 hearing. In this action the Morelands contend that in the C.R.C.P. 120 hearing the court violated their right to due process of law by refusing to hear evidence that the bank had agreed to convert their existing secured loans to a ten-year amortized note and had breached that agreement. Additionally, they assert that the bank's $20,302.58 bid at the foreclosure sales was grossly and unconscionably below the fair market value of the property, which the parties stipulated was $100,000 at all relevant times. The Morelands sought transfer of the county court unlawful detainer action to district court, a declaration that the public trustee's deeds to Marwich are void, an order setting aside Marwich's "purported redemption" and the sales on which it was based, a determination of the amount necessary for the petitioners to cure any default or to redeem the property, and an order allowing the Morelands a reasonable period of time in which to cure or to redeem.

The trial court granted the request to transfer the unlawful detainer action and ordered the two cases consolidated in district court. The district court then held a hearing on the issues in both cases and issued a detailed written judgment. The court concluded that the Morelands had been denied due process of law in the C.R.C.P. 120 hearing when they were not permitted to introduce evidence of their asserted oral agreement with the bank, and that the disparity between the bid and the purchase price, "while not controlling as a ground, is a factor the Court may consider

C.P. 120 hearing, the Morelands' attorney explained that his clients were defending against the foreclosure on the ground that "the security [the lien on the residence] was obtained by fraud," and that the bank was required to foreclose only on the vehicles from Moreland's business to satisfy the obligation. Parts of Moreland's response also set forth a theory of fraudulent inducement to sign the deeds of trust, indicating that he may have been requesting the court to set aside the deeds of

trust for fraud rather than to advance a theory that would negate the existence of a default. We are faced with an ambiguity in the record due in part to the district court's unwillingness to allow the Morelands' attorney to develop the nature of their defense further at the C.R.C.P. 120 hearing. Because the more plausible interpretation of Moreland's response is that it sets forth a theory that would negate the existence of a default, we proceed on the assumption that this was the proposed defense.

in determining jurisdiction." The trial court ruled that these grounds were adequate "to warrant the exercise of the Court's equity jurisdiction to provide the relief sought, viz. a reasonable extension of the [Morelands'] period of redemption of their property from foreclosure." It concluded that this relief would not adversely affect the bank or the public trustee, and would allow Marwich to receive full payments of its secured obligation with statutory interest. The court stated, "[w]hat will be affected is Marwich's potential for a large unearned windfall profit arising from the disparity between what Marwich paid for the property and its actual value." It then granted the Morelands thirty days to redeem, prescribed appropriate incidental relief in the event that they should exercise that redemption right, and decreed that if such right were not exercised Marwich should be granted possession pursuant to its unlawful detainer action and certain appropriate ancillary relief should be allowed. The Morelands thereafter deposited the required redemption money with the public trustee. The court then dismissed the unlawful detainer action and set aside the public trustee's deeds.

Marwich appealed, and the court of appeals reversed the judgment of the district court. *Moreland v. Marwich, Ltd., supra.* Although the court of appeals agreed that the Morelands should have been permitted to assert their proposed defense in the C.R. C.P. 120 action, it concluded that they were not denied due process of law because the ten-day stay allowed in that proceeding[3] was adequate to permit the Morelands to protect themselves by instituting a separate suit. Additionally, the court of appeals noted that the Morelands were informed of the amount required to redeem at least sixty days before expiration of the redemption period but they did not redeem. It held that the amount bid at the foreclosure sale, being the full amount of the secured obligation, was not "improper" and that a disparity between market value and bid price, while relevant to the exercise of equity

jurisdiction, is not controlling. The court of appeals concluded that, "[u]nder the circumstances here, where the Morelands could have redeemed but did not, where the bid was for the full amount due to the creditor, and where no deficiency judgment was sought, there was no justification for the additional relief granted." 629 P.2d at 1097. Accordingly, the court of appeals reversed the trial court's judgment, ordered dismissal of the Morelands' complaint, required the return of the money paid by the Morelands to redeem the property from Marwich, granted Marwich possession as sought in its unlawful detainer action, and remanded the case to the trial court for determination of any claim of Marwich against the Morelands for use and occupancy of the foreclosed property. We granted certiorari to review that judgment.

## II.

The sole issue for review is whether the trial court acted within the limits of its discretion in allowing the petitioners additional time to redeem from the foreclosure sales. A summary of the history of C.R. C.P. 120 will provide useful background for our consideration of this question.

C.R.C.P. 120 was adopted in its original form in response to a requirement contained in the Soldiers' and Sailors' Civil Relief Act of 1940, 50 U.S.C. §§ 501–591 (1976). Section 532 of that Act provides that no foreclosure of property shall be valid if made "during the period of [the debtor's] military service or within three months thereafter [with an exception not relevant here] unless upon an order previously granted by the court and a return thereto made and approved by the court." C.R.C.P. 120 provided a procedure for obtaining the required order and approved return of sale, thus protecting persons in the military service and enabling marketable title to be established through foreclosure proceedings. *See Hastings v. Security Thrift & Mortgage Co.,* 145 Colo. 36, 357

---

**3.** As the court of appeals noted, the C.R.C.P. 120 court also expressed a willingness to con-sider an extension of the stay if the petitioners should request it.

P.2d 919 (1960); *Whitaker v. Hearnsberger,* 123 Colo. 545, 233 P.2d 389 (1951); Morris, *Foreclosure by Sale by Public Trustee of Deeds of Trust in Colorado,* 28 Dicta 437, 440–445 (1951).

Traditionally, the scope of the C.R.C.P. 120 hearing was limited to a determination of whether the debtor was in the military service. *See id.* In *Princeville Corp. v. Brooks,* 188 Colo. 37, 533 P.2d 916 (1975), however, the trial judge in a C.R.C.P. 120 proceeding was faced with a request for an order of sale in a situation where the original owner had conveyed lots from a larger parcel to numerous parties after encumbering the entire parcel with the deed of trust sought to be foreclosed. The trial court took an expansive view of its jurisdiction under C.R.C.P. 120 and, rather than permitting the requested public trustee sale, retained jurisdiction as necessary "to align and protect the rights of the respective parties before it." 188 Colo. at 39, 533 P.2d at 917. We issued a rule to show cause why the district court should not authorize foreclosure by the public trustee, but then discharged the rule. We acknowledged that the original purpose of C.R.C.P. 120 was "to establish the status of the debtor with respect to military service" but stated that "merely because compliance with the [Soldiers' and Sailors' Civil Relief Act of 1940] was the original impetus for the rule does not forever chisel its construction into stone." 188 Colo. at 40, 533 P.2d at 918. We recognized "the modern trend to restrict *ex parte* taking of property without a hearing," and went on to hold

> that a Rule 120 hearing may be used to determine, if the circumstances warrant, whether there are factors in addition to military status which require the court to retain a supervising jurisdiction. No opportunity exists in foreclosure proceedings by the public trustee for defining those possible factors. Thus it would seem to be far safer and more prudent to enlist judicial supervision of the process from the beginning, rather than to untan-

gle a knotted summary decree at some later date.

188 Colo. at 40–41, 533 P.2d at 918.

In *Valley Development at Vail, Inc. v. Warder,* 192 Colo. 316, 557 P.2d 1180 (1976), we interpreted *Princeville* as expressing a concern for adherence to the constitutional requirements of due process as they relate to *ex parte* taking of property without a hearing, and rejected the trial court's view that the *Princeville* holding was limited to the facts of that case. In *Valley Development* we vacated orders authorizing sales of property by the public trustee because the petitioners "had no opportunity to be heard at a meaningful time or in a meaningful manner concerning the matters constituting the alleged defaults, which are apparently challenged, particularly as to the details of the accumulated indebtedness alleged to be in default," citing *Fuentes v. Shevin,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972). 192 Colo. at 319, 557 P.2d at 1182. *See Dews v. District Court,* 648 P.2d 662 (Colo. 1982).

Subsequent to *Princeville* and after the trial court Rule 120 hearing in *Valley Development,* we amended C.R.C.P. 120 to confirm that inquiry into the "existence of a default or other circumstances" authorizing the exercise of the power of sale in the instrument sought to be foreclosed is within the scope of the hearing. C.R.C.P. 120(d). Thus, while the rule was originally conceived as a vehicle for meeting the requirements of the Soldiers' and Sailors' Civil Relief Act of 1940 and thereby establishing the marketability of title obtained through foreclosure proceedings, it now has been expanded in scope for the purpose of according a debtor due process protections against summary foreclosure actions consistent with those protections against deprivations of property without a prior judicial hearing that have received recognition in a line of modern decisions of the United States Supreme Court. *See North Georgia Finishing, Inc. v. Di-Chem, Inc.,* 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975) (procedures for prejudgment garnishment of bank accounts violate due process);

*Fuentes v. Shevin, supra* (prejudgment replevin procedures violate due process); *Sniadach v. Family Finance Corp.*, 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969) (prejudgment garnishment procedures relating to wages violate due process); *cf. Mitchell v. W.T. Grant Co.*, 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974) (procedure for writ of sequestration in advance of judgment consistent with due process).

The foregoing background informs our consideration of the meaning to be given to C.R.C.P. 120(d), prescribing the scope of the hearing under the rule. C.R.C.P. 120(d) provides:

At the time and place set for the hearing or to which the hearing may have been continued, the court shall examine the motion and the responses, if any, and shall hear such testimony as may be offered. The scope of inquiry at such hearing shall not extend beyond the existence of a default or other circumstances authorizing, under the terms of the instrument described in the motion, exercise of a power of sale contained therein, and such other issues of which consideration may be required by the Soldiers' and Sailors' Civil Relief Act of 1940, as amended. The court shall determine whether there is a reasonable probability that such default or other circumstance has occurred, and whether an order authorizing sale is otherwise proper under said Soldiers' and Sailors' Civil Relief Act, as amended, and shall summarily grant or deny the order in accordance with such determination. Neither the granting nor the denial of a motion under this Rule shall constitute an appealable order or judgment; the granting of any such motion shall be without prejudice to the right of any person aggrieved to seek injunctive or other relief in any court of competent jurisdiction, and the denial of any such motion shall be without prejudice to any right or remedy of the movant in the premises.

■ The C.R.C.P. 120 court in the case now before us took a restrictive view of the language of the rule, holding that "the existence of a default" was to be determined solely by reference to the language of the instruments creating the secured obligation, notwithstanding the debtors' claim that the loan terms were modified by an oral agreement. This cramped reading of the rule is inconsistent with its purpose to test whether, considering all relevant evidence, there is a reasonable probability that a default exists. *See Valley Development at Vail, Inc. v. Warder, supra.* To ignore evidence that the written instruments have been modified and that the debtor is not in default under the current agreement between the parties would sacrifice the very protections against unwarranted summary foreclosures that C.R.C.P. 120 was expanded by construction and revision to accord. We agree with the court of appeals, therefore, that the C.R.C.P. 120 court erred in excluding evidence of an oral agreement between the Morelands and the bank to modify the payment schedule on the secured obligations.

■ We do not agree, however, with the court of appeals' conclusion that, despite the C.R.C.P. 120 court's error, the Morelands were not entitled to the equitable relief granted by the district court in the subsequent action. In reviewing the court of appeals' decision, we take guidance from certain recognized principles of equity jurisdiction in real estate foreclosure matters. Safeguarding the interest of a debtor in the foreclosure of his equity of redemption is a traditional duty of a court of equity. *Handy v. Rogers*, 143 Colo. 1, 351 P.2d 819 (1960); *see Chew v. Acacia Mutual Life Insurance Co.*, 165 Colo. 43, 437 P.2d 339 (1968). In appropriate circumstances an extension of the statutory period of redemption is within the equity powers of the court, even after the redemption period has expired and a public trustee's deed has issued. *Arnold v. Gebhardt*, 43 Colo.App. 387, 604 P.2d 1192 (1979) (redemption period extended to remedy reliance on public trustee's erroneous advice that the period was six months, as permitted for agricultural real estate, rather than 75 days, as allowed for other real property); *cf. Burrell Registration Co. v. McKelvey*, 194 Colo. 157, 570 P.2d 248 (1977) (court may exercise its equitable jurisdiction to extend the period of

time allowed to cure a default to remedy creditor's noncompliance with statutory notice requirements). A sale price grossly below fair market value is an appropriate factor to consider in determining whether an extension of the statutory redemption period should be allowed for equitable reasons. *Chew v. Acacia Mutual Life Insurance Co., supra; Arnold v. Gebhardt, supra.*

We believe the court of appeals' resolution of the issue unduly minimizes the difficulties presented to the Morelands as a result of the C.R.C.P. 120 court's erroneous ruling and fails to give appropriate scope to the discretion of the trial judge here in the exercise of equitable jurisdiction to fashion a remedy for that wrong. The remedy created by the ruling of the trial court at the C.R.C.P. 120 hearing that the Morelands had ten days in which to institute a separate court action was substantially more costly and complex than allowing them to present evidence of their defense at that hearing, the right which the court incorrectly denied them. Redemption also is a burdensome remedy, requiring the debtors to pay the full amount of an obligation that they contend should rightfully be amortized by monthly payments over a ten-year period. Although the Morelands' failure to pursue the avenues of relief available to minimize the harm caused by the C.R.C.P. 120 court's erroneous order detracts from the strength of their request for equitable relief, there can be no doubt that the alternatives left to them were substantially more burdensome than presentation of their proffered evidence in the C.R.C.P. 120 hearing, a procedure that was their right.

■ In fashioning a remedy, the trial court balanced the equitable considerations affecting all the parties involved. It noted the failure of the Morelands to pursue their alternative relief but also took into account the adverse effects of the C.R.C.P. 120 court's erroneous ruling, the great disparity between the bank's bid at the public trustee's sale and the fair market value of the property, and—importantly—the fact that the only adverse effect on other parties from allowing the Morelands additional time to redeem would be the loss of a windfall profit by Marwich. It also noted that the Morelands did not ask to be permitted to reinstate the indebtedness so that it could be retired by periodic payments, but requested only the opportunity to redeem from the foreclosure sale by paying the full amount of the secured obligations.[4] To accomplish justice, a court of equity may fashion a remedy suitable to the circumstances of the case. *Dlug v. Wooldridge,* 189 Colo. 164, 538 P.2d 883 (1975); *Rice v. Hilty,* 38 Colo.App. 338, 559 P.2d 725 (1976); *see Burrell Registration Co. v. McKelvey, supra.* Under the circumstances present here we believe that the trial court properly exercised its equitable jurisdiction and acted within its discretion in remedying the erroneous restriction of evidence in the C.R.C.P. 120 hearing by extending the Morelands' redemption period.[5]

We reverse the judgment of the court of appeals and direct that the trial court's judgment be reinstated.

---

4. Although the Morelands' complaint requests the opportunity either to cure any default or to redeem, they argued only for the latter remedy at the hearing, and the trial court assumed in its opinion that they were only requesting an extra period of time to redeem.

5. We do not consider it controlling whether the stay order was adequate to preserve the petitioners' due process rights and do not address that issue.