Jack GOODWIN and Winona C. Goodwin, Petitioners,

v.

The DISTRICT COURT In and For the SIXTEENTH JUDICIAL DISTRICT, State of Colorado, and the Honorable M. Jon Kolomitz, District Judge, Respondents.

No. 88SA338.

Supreme Court of Colorado, En Banc.

Sept. 18, 1989.

Roberta Strohson, Colorado Rural Legal Services, Inc., La Junta, and Daniel M. Taubman, Colorado Coalition of Legal Services Programs, Denver, for petitioners.

M. Jon Kolomitz, pro se.

Manuel A. Ramos, Denver, for amicus curiae The Legal Aid Soc. of Metropolitan Denver.

Chief Justice QUINN delivered the Opinion of the Court.

The question in this case is whether a district court, when ruling on a C.R.C.P. 120 motion for a court order authorizing the sale of encumbered real property in accordance with a power of sale contained in a deed of trust, should consider whether the moving parties are real parties in interest, and also the asserted defenses of waiver and estoppel, in determining the existence of a default or other circumstance authorizing the exercise of the power of sale contained in the deed of trust. The district court ruled that the only issue to be resolved at a Rule 120 hearing is whether there has been a default under the terms of the note and that the "real party in interest" defense, as well as the defenses of waiver and estoppel, should be raised in a separate action brought by the debtor to enjoin the authorized sale. We issued a rule to show cause and we now make the rule absolute.

I.

Colorado Rule of Civil Procedure 120(a) permits any interested person to file a motion seeking an order authorizing a sale of real property under a power of sale contained in a deed of trust. When such a motion is properly filed, the court must fix a time and place for hearing on the motion. *Id.* Pursuant to C.R.C.P. 120(d), the scope of inquiry at such hearing is limited to "the existence of a default or other circumstances authorizing, under the terms of the instrument described in the motion, exercise of a power of sale contained therein, and such other issues of which consideration may be required by the Soldiers' and Sailors' Civil Relief Act of 1940, as amended." The court conducting such a hearing is required to determine whether there is a reasonable probability that such default or other circumstance occurred and whether an order authorizing the sale is otherwise proper under the Soldiers' and Sailors' Civil Relief Act. *Id.*

In August 1988 Marjory Ollson and Etta Mae Vann filed a motion for an order authorizing the sale of real property by reason of the default of Jack Goodwin and Winona Goodwin on a promissory note payable to Joanna Boston, which note was secured by a deed of trust authorizing the exercise of a power of sale upon default in payment of the note. The motion alleged that Joanna Boston had assigned the promissory note to Marjory Ollson and Jeff Vann, who had since died, and that Etta Mae Vann was appointed administratrix of Jeff Vann's estate. The Goodwins filed a response to the motion, claiming that Marjory Ollson and Etta Mae Vann lacked any valid interest in the note and deed of trust, and that they had waived or were estopped from asserting any default in payment on the note.

A hearing was held on the motion on September 7, 1988, which established the following facts. The Goodwins executed a $13,000 promissory note on December 15, 1977, to Joanna Boston for the purchase of a house at 1006 Daniels Avenue, La Junta, Colorado. The note was secured by a deed of trust for the benefit of Joanna Boston, and provided for 204 monthly installment payments of $101.81, which included principal and interest at the rate of six percent per year, payable on the 15th day of each month. The deed of trust securing the note contained a provision authorizing a public trustee foreclosure sale upon default in payment of the note and also contained an acceleration clause which authorized the beneficiary of the deed of trust to declare the entire principal and interest payable at once in case of any default in payment.

On the same day the Goodwins executed the note, Joanna Boston assigned her interest in the note to her then living children, Marjory Ollson of San Miguel, California, and Jeff Vann of Tahlequah, Oklahoma.

The assignment was dated December 15, 1977, and contained a wavering line drawn through the name "Marjory Ollson" or possibly just through the name "Marjory." Joanna Boston died in the summer of 1981 and was survived by Marjory Ollson and Jeff Vann.

After Joanna Boston's death, the attorneys for her estate established an escrow account at Empire State Bank in Rocky Ford, Colorado, for the receipt of the Goodwins' payments on the note and for the disbursal of the payments to Marjory Ollson and Jeff Vann. In November 1986 Jeff Vann died and was survived by his wife, who was apparently appointed administratrix of his estate in Oklahoma, although no duly authenticated copy of the order of appointment was offered or admitted into evidence.

An employee of Empire State Bank testified that the bank, beginning with the first escrow payment in October 1981, recorded the Goodwins' payments in its ledger, deducted bank fee services, and mailed cashier's checks to Jeff Vann or to his estate, and to Marjory Ollson. According to the bank employee, the Goodwins failed to make twenty-seven payments when due during the period from October 1981 to September 1988, with the result that the Goodwins were presently in arrears in the amount of $2,926.79. The bank employee also testified that since February 1988 the Goodwins had made each monthly payment and each payment had been accepted by the bank and then forwarded to Jeff Vann's estate and Marjory Ollson.

At the conclusion of the evidence submitted by Marjory Ollson and Etta Mae Vann, the Goodwins moved to dismiss the C.R.C.P. 120 motion on the basis that Ollson and Vann were not the real parties in interest to pursue the C.R.C.P. 120 motion and that, even if they were, they had waived any claimed default in payment or were estopped from asserting a default as a result of their acceptance of the recent payments made by the Goodwins. The dis-

trict court denied the Goodwins' motion to dismiss.

Winona Goodwin testified that from 1977 to 1981 she made installment payments to Joanna Boston and that upon Boston's death she (Goodwin) made one installment payment to Boston's daughter, Marjory Ollson, and one installment payment to Boston's son, Jeff Vann. Thereafter, according to Winona Goodwin, she made subsequent payments to the escrow account established at the Empire State Bank. Winona Goodwin acknowledged that, while she had failed to make many of the payments in the past, she made each payment from February 1988 to the present and that every payment had been accepted by the bank. It was the Goodwins' contention that such evidence constituted a waiver by Marjory Ollson and Etta Mae Vann of any claim of default in the promissory note and estopped them from obtaining an order of sale.

The district court, at the conclusion of the evidence, ruled that the Goodwins' asserted "real party in interest" defense and the defenses of waiver and estoppel were not proper matters for the court to consider in resolving the C.R.C.P. 120 motion but, instead, should be raised in an independent action to enjoin the order of sale. The district court found that the Goodwins had failed to make a total of twenty payments since October 1981, that twenty-seven of the payments actually made were late, that all payments were timely made from March through August 1988,[1] and that these recent payments were accepted by Marjory Ollson and Etta Mae Vann even subsequent to the filing of their motion for an order of public sale. On the basis of these findings, the district court entered an order authorizing the sale by the public trustee of the Goodwins' property.

The Goodwins petitioned this court for an order staying the execution of the order of sale, which we granted, and also for an order requiring the district court to show

---

1. The record does not reflect why the district court found that payments had been timely made from March through August 1988. The testimony reflects that the Goodwins timely made payments from February through August 1988.

cause why it should not be prohibited from executing the order of sale.

## II.

Colorado Rule of Civil Procedure 120 was adopted in response to the Soldiers' and Sailors' Civil Relief Act of 1940, 50 U.S.C. App. §§ 501 to –591 (1982). *E.g., Whitaker v. Hearnsberger,* 123 Colo. 545, 233 P.2d 389 (1951). Although the purpose of Rule 120 was originally intended to protect members of the military service from prejudice resulting from foreclosure proceedings commenced against them during their period of military service, *see* 50 U.S.C.A. app. § 532 (1981), the scope of the rule has been extended by case law to provide due process protections with respect to the taking and public sale of a real property interest of a debtor under a deed of trust.

In *Princeville Corp. v. Brooks,* 188 Colo. 37, 533 P.2d 916 (1975), we held that C.R.C.P. 120 was broad enough in scope to permit a court to consider factors other than the military service of the debtor, even though the then existing version of the rule merely stated that the court, at the time and place of the hearing, "shall examine such affidavits as may have been filed [by the moving party] and hear such testimony as may be offered and shall then summarily determine the motion and ... enter an order accordingly." In rejecting the claim that Rule 120 limits the court to a consideration of whether the debtor is in military service, we remarked that compliance with the Soldiers' and Sailors' Civil Relief Act was the original impetus for Rule 120 but that a growing awareness of due process considerations militated in favor of extending the rule to permit a district court to retain supervisory power over a foreclosure in order to align and protect the rights of all parties to the proceeding. *See also Valley Development at Vail, Inc. v. Warder,* 192 Colo. 316, 557 P.2d 1180 (1976) (reaffirming *Princeville*'s holding that C.R.C.P. 120 entitles debtor and subor-dinating creditor to a due process hearing on issue of foreclosure or accumulated indebtedness alleged to be in default).

Subsequent to *Princeville,* C.R.C.P. 120 was amended, effective October 1, 1976, as follows:

(c) Response; Contents; Filing and Service. Not less than 5 days prior to the date set for the hearing, any interested person who disputes, on grounds within the scope of the hearing provided for in section (d), the movant's entitlement to an order authorizing sale may file and serve a response to the motion, verified by the oath of such person, setting forth the facts upon which he relies and attaching copies of all documents which support his position. Service of such response upon the movant shall be made in accordance with Rule 5(b).[2]

(d) Hearing; Scope of Issues; Order; Effect. At the time and place set for the hearing or to which the hearing may have been continued, the court shall examine the motion and the responses, if any, and shall hear such testimony as may be offered. The scope of inquiry at such hearing shall not extend beyond the existence of a default or other circumstances authorizing, under the terms of the instrument described in the motion, exercise of a power of sale contained therein, and such other issues of which consideration may be required by the Soldiers' and Sailors' Civil Relief Act of 1940, as amended. The court shall determine whether there is a reasonable probability that such default or other circumstance has occurred, and whether an order authorizing sale is otherwise proper under said Soldiers' and Sailors' Civil Relief Act, as amended, and shall summarily grant or deny the order in accordance with such determination. Neither the granting nor the denial of a motion under this Rule shall constitute an appealable order or judgment; the granting of any

---

2. Colorado Rule of Civil Procedure 120(c) was amended effective January 1, 1987, to provide that the five-day period in the rule for filing a response includes "intermediate Saturdays, Sundays, and legal holidays" and that the provisions of C.R.C.P. 6(e) for adding three days to any prescribed period for service of a notice or other paper does not apply to the computation of the five-day period.

such motion shall be without prejudice to the right of any person aggrieved to seek injunctive or other relief in any court of competent jurisdiction, and the denial of any such motion shall be without prejudice to any right or remedy of the movant in the premises.

In *Moreland v. Marwich, Ltd.*, 665 P.2d 613 (Colo.1983), we examined the scope of the amended Rule 120 in the context of a court order allowing debtors additional time to redeem their property from two public trustee foreclosure sales after the statutory time for redemption had expired and the public trustee deeds had been issued. Bobbie Moreland and Elizabeth Moreland had executed two deeds of trust on their property to secure three outstanding promissory notes payable to the Platte Valley Bank. After the Morelands failed to make certain payments on the notes, the bank commenced proceedings to foreclose the deeds of trust through the public trustee. The Morelands filed a response in which they alleged that the bank had orally agreed to convert the loans into a ten-year note in exchange for additional security furnished by the Morelands, but that after the Morelands had furnished the additional security the bank failed to comply with the agreement. The district court refused to hear evidence concerning the oral agreement because, in the court's view, the only two considerations in a C.R.C.P. 120 hearing were whether the defenses under the Soldiers' and Sailors' Civil Relief Act were applicable and whether there had been a default under the terms of the promissory note. The district court issued an order authorizing the public trustee sale and stayed execution of its order for ten days. The bank purchased the property at the sale for approximately $20,000, and thereafter Marwich, Limited, a junior judgment lienor, exercised its redemption rights and acquired the property. Marwich, Limited then sought possession of the property, and the Morelands instituted an action

claiming that the C.R.C.P. 120 court, which entered the order of sale, had violated their due process rights by refusing to consider evidence on the oral agreement and that the purchase price at the foreclosure sale was unconscionably below the fair market value of the property. The trial court determined that the Morelands' due process rights had been denied at the Rule 120 hearing, and, in view of the disparity between the bank's purchase price and the market value of the property, the court exercised its equity jurisdiction by granting the Morelands thirty days to redeem the property. The court of appeals reversed the judgment of the district court, concluding that, although evidence of the oral agreement between the Morelands and the bank should have been considered at the Rule 120 hearing, the Morelands were not denied due process of law because they had been given a ten-day stay which was adequate for them to file an independent action to enjoin the sale by the public trustee. *Moreland v. Marwich, Ltd.*, 629 P.2d 1095 (Colo.App.1981). We granted the Morelands' petition for certiorari and reversed the judgment of the court of appeals.

We initially noted in *Moreland* that the purpose of a Rule 120 hearing had been considerably expanded from its original form in order to provide a debtor with "due process protections against summary foreclosure actions consistent with those protections against deprivations of property without a prior judicial hearing that have received recognition in a line of modern decisions of the United States Supreme Court." 665 P.2d at 617.[3] In light of this expanded purpose, we then determined that the Rule 120 court erred in excluding the Morelands' proffered evidence of their agreement with the bank, remarking as follows:

The C.R.C.P. 120 court in the case now before us took a restrictive view of the language of the rule, holding that "the existence of a default" was to be deter-

3. We cited in *Moreland* the following United States Supreme Court decisions: *North Georgia Finishing, Inc. v. Di-Chem, Inc.*, 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975); *Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); *Sniadach v. Family Finance Corp.*, 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969); and *Mitchell v. W.T. Grant Co.*, 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974).

mined solely by reference to the language of the instruments creating the secured obligation, notwithstanding the debtors' claim that the loan terms were modified by an oral agreement. This cramped reading of the rule is inconsistent with its purpose to test whether, considering all relevant evidence, there is a reasonable probability that a default exists. To ignore evidence that the written instruments have been modified and that the debtor is not in default under the current agreement between the parties would sacrifice the very protections against unwarranted summary foreclosures that C.R.C.P. 120 was expanded by construction and revision to accord. We agree with the court of appeals, therefore, that the C.R.C.P. 120 court erred in excluding evidence of an oral agreement between the Morelands and the bank to modify the payment schedule on the secured obligations.

665 P.2d at 618 (citation omitted).

We went on to conclude in *Moreland* that the court of appeals committed error when it held that, "despite the C.R.C.P. 120 court's error, the Morelands were not entitled to the equitable relief granted by the district court in the subsequent action." *Id.* It was thus our ultimate determination that, under the particular circumstances of the case, "the trial court properly exercised its equitable jurisdiction and acted within its discretion in remedying the erroneous restriction of evidence in the C.R.C.P. 120 hearing by extending the Morelands' redemption period." 665 P.2d at 619.

■ The message of *Moreland* is clear. The due process protections contemplated by Rule 120 will be satisfied only when a court conducting a Rule 120 proceeding considers all relevant evidence in determining whether there is a reasonable probability of a default or other circumstance authorizing the exercise of the power of sale under the terms of the instrument described in the Rule 120 motion. The court's resolution of the Rule 120 motion, therefore, should necessarily encompass a consideration not only of the evidence offered by the creditor seeking the order of sale but also of any evidence offered by the debtor to controvert the moving party's evidence or to support a legitimate defense to the motion. A court's refusal to consider such properly offered evidence in resolving the issue of default adversely to the debtor is tantamount to the taking of property in a summary fashion without any hearing at all—a deprivation clearly violative of due process of law.

### III.

With our prior decisions in *Princeville* and *Moreland* as a backdrop, we turn to the Goodwins' claims that the district court erred by refusing to consider their "real party in interest" defense to the Rule 120 motion and their asserted defenses of waiver and estoppel and by determining, on the basis of this limited evidence, that there was a reasonable probability of a default which authorized the exercise of the power of sale contained in the deed of trust.

### A.

The Goodwins raise the following arguments in support of their claim that Marjory Ollson and Etta Mae Vann were not the real parties in interest: that the purported assignment of the promissory note to Marjory Ollson was invalid due to the interlineation of either her first or possibly her full name in the assignment; that if the purported assignment of the promissory note by Joanna Boston was not valid, there was no showing that the deed of trust in favor of Joanna Boston and the promissory note secured by the deed of trust was ever probated through the estate of Joanna Boston and that, therefore, Marjory Ollson and Etta Mae Vann had no legitimate interest in the promissory note and deed of trust; and that, although the assignment might arguably have been valid as to Jeff Vann, he died subsequent to the assignment and there was no showing by Etta Mae Vann that she was the duly appointed administratrix of Jeff Vann's estate. Without passing on the merits of the Goodwins' "real party in interest" defense, we are satisfied that they should have been entitled to raise that defense at the C.R.C.P. 120 hearing.

■ Colorado Rule of Civil Procedure 17(a) requires that every action "be prosecuted in the name of the real party in interest." The real party in interest is that party who, by virtue of substantive law, has the right to invoke the aid of the court in order to vindicate the legal interest in question. *See* 3A J. Moore, *Federal Practice* ¶ 17.07 (1989); 4 R. Hardaway & S. Hyatt, *Colorado Practice, Civil Rules Annotated*, 193–94 (1985). Although the Colorado Rules of Civil Procedure do not expressly designate the procedure for raising a "real party in interest" defense, we know of no reason to prohibit such a defense from being raised to a Rule 120 motion.

■ Rule 120(a) authorizes "any interested person" to file a motion for an order of sale, and Rule 120(c) permits the debtor to dispute the moving party's entitlement to the order. Implicit in Rule 120 is the requirement that the party seeking an order of sale have a valid interest in the property allegedly subject to the power of sale. Unless the "real party in interest" defense is considered at a Rule 120 hearing, any order for sale might well result in the sale of property in favor of a party who has no legitimate claim to the property at all. Once a debtor in a Rule 120 proceeding raises the "real party in interest" defense, therefore, the burden should devolve upon the party seeking the order of sale to show that he or she is indeed the real party in interest. Such an interpretation of Rule 120 is consistent with our prior decision in *National Advertising Co. v. Sayers*, 144 Colo. 356, 356 P.2d 483 (1960), where we held that the fact that the plaintiff in a breach of contract action had acquired all the corporate stock of the original contracting company did not satisfy the "real party in interest" requirement of Rule 17, since the plaintiff had failed to prove an assignment of the contract claim in question. *See also* 4 R. Hardaway & S. Hyatt, *Colorado Practice, Civil Rules Annotated*, at 194.

■ In this case the Goodwins disputed the right of Marjory Ollson and Etta Mae Vann to exercise the power of sale in the deed of trust on the basis of which the C.R.C.P. 120 motion was filed. The district court's failure to allow the Goodwins to present the "real party in interest" defense deprived the Goodwins of their right to challenge the legal entitlement of the moving parties to any order of sale under the deed of trust. While we recognize that the Goodwins could have filed an independent action to enjoin the public sale, C.R.C.P. 120(d), the availability of a collateral remedy should not serve to divest the Goodwins of their opportunity to defend against the deprivation of their real property interest by showing that the parties seeking the order of sale were without authority to exercise the power of sale on which any order of sale necessarily would be predicated. We thus conclude that the scope of inquiry in a Rule 120 proceeding encompasses an inquiry into whether the moving parties are the real parties in interest by virtue of their right to enforce the power of sale contained in the instrument on which the Rule 120 proceeding is based, and that the district court erred in refusing to consider the "real party in interest" defense raised by the Goodwins.

### B.

We next consider whether the district court erred in failing to consider the Goodwins' asserted defenses of waiver and estoppel. The Goodwins argue, as they did during the Rule 120 hearing, that the bank's actions in accepting late payments and forwarding such payments to Marjory Ollson and Etta Mae Vann, even after the filing of the Rule 120 proceeding, constituted a waiver of any claim of default, and, alternatively, estopped Marjory Ollson and Etta Mae Vann from exercising the acceleration clause and the power of sale under the deed of trust. Again, without passing on the merits of the Goodwins' waiver and estoppel defenses, we conclude that such defenses can properly be raised at a Rule 120 hearing.

■ A payee of a promissory note with an option to accelerate may waive the right to exercise the option. Such waiver may be shown by accepting payment after default, by accepting payment after giving notice of an election to accelerate, or by

mere inaction. *See Barday v. Steinbaugh*, 130 Colo. 10, 272 P.2d 657 (1954); *see also Duran v. Housing Authority of the City and County of Denver*, 761 P.2d 180 (Colo. 1988) (housing authority implicitly waived its right to terminate tenant's lease for nonpayment of rent by accepting late payments of rent from tenant).

In the instant case, the terms of the promissory note authorized the payee to accelerate the payment of any outstanding principal and interest upon default of any individual payment of principal or interest. In light of the fact that the primary purpose of a Rule 120 hearing is "to test whether, considering all relevant evidence, there is a reasonable probability that a default exists," *Moreland*, 665 P.2d at 618, the resolution of any question relating to the Goodwins' default necessarily depended upon whether Marjory Ollson and Etta Mae Vann waived their right to exercise, or were estopped from exercising, the acceleration clause of the promissory note and the power of sale under the deed of trust. The Goodwins' defenses of waiver and estoppel were cognizable defenses to the claim of default, and the district court erred in failing to consider these defenses in resolving the Rule 120 motion.

### IV.

In summary, we hold that the district court in a Rule 120 proceeding must consider, when the issue is properly raised by the debtors, whether the moving parties are the real parties in interest and also consider the asserted defenses of waiver and estoppel. We accordingly make the rule absolute and direct the district court to conduct further proceedings on these asserted defenses in a manner consistent with the views herein expressed.