## No. 13,298.

HOLLENBECK ET AL. *v.* PEOPLE FOR THE USE OF CHURCHILL.

(37 P. [2d] 387)

Decided October 22, 1934.

Mr. CLIFFORD H. STONE, Mr. WILLIAM S. RUSH, for plaintiffs in error.

Mr. WALLACE SCHOOLFIELD, for defendant in error.

*In Department.*

MR. JUSTICE BOUCK delivered the opinion of the court.

STELLA K. Churchill sued the sheriff of Chaffee county

for damages claimed on account of alleged trespass upon her property. Judgment went against the sheriff and is here for review. Before taking up the discussion of alleged errors, we shall briefly state the facts as apparently found by the jury.

A poolroom in Salida was owned by one Hurley, who, in connection with it, employed a man named E. O. Churchill. Mrs. Churchill, then an unmarried woman, purchased the poolroom from Hurley, receiving on July 16, 1925, a bill of sale made out to herself in her maiden name. Mr. Churchill was continued by her in the position of manager. He was given full power to operate the business for her, but contributed no money toward the purchase price, which was paid in part directly by her and in part by the income of the business. By arrangement with her, he conducted a barber shop in the same room, but this, too, seems to have been run as a part of her business. About five months after the purchase they were married.

In January of 1932 the sheriff received an execution issued out of the county court of Gunnison county on a judgment in favor of one Miller and against E. O. Churchill in the sum of approximately $700, founded upon a personal indebtedness incurred by Churchill in 1916 and having, of course, no connection with the personal or business affairs, or with the property, of Mrs. Churchill. Purporting to act under authority of this execution, the sheriff levied upon the property on which the trespass complained of was committed. That property consisted of certain articles which Mrs. Churchill had purchased in 1928, 1929, and 1930 and placed in her poolroom. The articles included three cash registers, an electric range, an electric refrigerator, and an adding machine claimed to have an aggregate value of nearly $1,200. Details in the purchase of some or all of the property had been attended to by Mrs. Churchill's husband, sometimes without her having anything to do personally with the particular transaction, but invariably it was Mrs. Churchill's

money or the income of her business that paid for the purchase, never money of her husband's.

When the sheriff came to the poolroom to make his levy, the attorney whom Mrs. Churchill's husband, with her approval and ratification, employed to look after her interests, informed him that the property belonged to her and stated that he would bring suit against the sheriff on the official bond if levy should be made. The attorney stated this on two occasions, at least once before the actual levy. E. O. Churchill likewise promptly told the sheriff that his wife owned the property.

Such being the facts in general outline, the sheriff nevertheless proceeded to make the levy, in spite of the warnings given him, and sold the property at execution sale. An action was promptly brought to recover damages.

The alleged errors relied upon are: (1) That the verdict is contrary to law and evidence in that the amount of damages awarded is inconsistent with the evidence, that there is no evidence to support the amount of damages, and that the damages awarded are manifestly the result of caprice and compromise; (2) that there is no competent evidence to sustain damages; (3) that the failure to allege and prove a demand by Mrs. Churchill for return of the property constitutes a fatal omission; and (4) that there is no evidence to support a general finding for Mrs. Churchill.

The record does not disclose the existence of any caprice or compromise on the part of the jurors.

■ Considerable substantial evidence, both oral and documentary, was adduced by both sides. No error in the admission or the rejection of any particular evidence is brought to our attention by the assignments. It was for the jury to judge of the credibility of witnesses and the weight of the evidence. They did so. If we had seen or heard the witnesses we might perhaps have reached a different conclusion. Those witnesses, however, are not before us, and the verdict must stand, unless

there is merit in the contention that the verdict is inconsistent with any and all views that might reasonably be taken of the evidence, or in the contention that a demand for possession was necessary and was not made.

We consider, then, the first contention, whereby the verdict would have to be one or the other of two things, either a verdict for the exact total representing the valuations given by Mrs. Churchill's witnesses, or else a verdict in favor of the sheriff.

The witnesses for Mrs. Churchill testified to specific sums as the values of the various articles sold by the sheriff. The sums correspond with the ones set forth in the complaint. It is said that, inasmuch as no evidence was offered to assail or question those values, either the verdict must necessarily adopt those exact figures or it must be set aside. We do not understand how the reduction by the jury of the amount claimed by the plaintiff could possibly be prejudicial to the defendant. Mrs. Churchill is not complaining. Furthermore, counsel's logic is fallacious because it ignores the basic function of the jury in finding values. When a witness swears, for instance, that a thing is worth a thousand dollars, it is a mere opinion. If a witness impresses the jury not only as being honest, but as possessed of good memory and judgment, the opinion may possibly, and often should, be accepted just as it is given. But, on the other hand, a witness, though manifestly honest, may appear to the jury as lacking in either memory or judgment. The opinion of such a witness does not, as under counsel's argument it would, create a dilemma whereby the opinion is either to be accepted at its full face value, or else be wholly rejected. There is a middle ground of large area where human nature, both in its strength and in its weakness, has eternal play. It is important to preserve the jury's right and duty of determining credibility and of weighing the evidence, not as a mere matter of theory, but as a concrete and practical thing. Any other view would manifestly be an inexcusable encroachment upon

the jury system. Therefore the jurors may, in their sound discretion, discount the inflated appraisal of a witness before them by arriving at the truth to the best of their ability, with due allowance for both intentional and unintentional exaggeration or other error in the testimony. The situation is to be distinguished from such as exists when a jury awards, to one who alleges an express contract for payment of a specific sum, an amount substantially higher or lower; in other words, when the jury treats a claim of express contract as if it were quantum valebat or quantum meruit. *Burlington Co. v. Chapman,* 53 Colo. 28, 123 Pac. 649. This and similar cases cited are not in point. Nor can we invoke here the assistance of cases where facts, admitted by both sides to be true, lead inevitably to a single permissible conclusion, instead of which the jury or the court has substituted a conclusion radically and irreconcilably false. See *Burns-Moore Co. v. Watson,* 45 Colo. 91, 101 Pac. 335.

■ Coming to the second of the two contentions, we inquire whether a demand by Mrs. Churchill for possession of her property was necessary. Where one who claims to be the real owner comes upon the scene after a levy has been made, it is, of course—with certain exceptions that need not now be noticed—necessary to make a demand upon the officer. Where, on the contrary, the officer is warned by or on behalf of the true owner before he makes his levy, as was the plaintiff in error, it would be an unreasonable requirement if, in addition to a timely warning, a formal demand or notice were exacted. A sheriff acts at his peril if, before seizure under execution of property in the custody of an execution debtor, he has knowledge or notice of another person's claim to the property. When such circumstances arise, the officer ought to—and in this case possibly did—seek from the execution creditor a special direction and proper indemnifying security. In the case at bar the sheriff had adequate notice. The verdict disposes of the issue of ownership as between Churchill and his wife in favor of the

latter. This case is not complicated by any question of estoppel, for this is neither pleaded nor proved.

It follows from the foregoing that the rulings of the trial court were right.

Judgment affirmed.

Mr. Justice Butler, sitting for Mr. Chief Justice Adams, and Mr. Justice Hilliard concur.