## No. 19,207.

FAYE HANDY, ET AL. *v.* EMMA ROGERS.
(351 P. [2d] 819)

Decided May 9, 1960.

1

Mrs. MOLLIE O. EDISON, Mr. NORMAN E. BERMAN, for plaintiffs in error.

Messrs. MURRAY, BAKER & WENDELKEN, Mr. GERALD W. BENNETT, for defendant in error.

*En Banc.*

MR. JUSTICE DOYLE delivered the opinion of the Court.

PLAINTIFFS in error were defendants in the trial court in an action in which defendants in error sought a recovery on a note in the amount of $34,000.00, together with interest, costs and attorney fees, and also demanded a decree of foreclosure of a deed of trust which secured the indebtedness. Trial was had to the court and at its conclusion judgment was entered in the amount demanded. Special execution issued, and plaintiffs purchased the property at a sheriff's sale on a bid of $1,000.00. Defendant in error will be referred to as plaintiff. Plaintiff in error, Mrs. Handy, who was the principal defendant, will be called defendant.

The answer admitted the execution of the note and deed of trust and denied the other allegations of the complaint. Affirmative defenses alleged a failure of consideration and fraud in the inducement. The counterclaim sought a rescission based on the alleged fraudulent representations which will be hereafter described.

The property involved in this litigation is the LaFonda Hotel in Woodland Park, Colorado. This is a small hotel consisting of seven rooms, a dining room and a bar. Plaintiff had owned and operated the hotel since 1953 and it had been built in 1935. The note and deed of trust were executed in connection with the purchase by defendant of this hotel for a total purchase price of $40,000.00 of which $34,000.00 was paid by the secured note. Defendants made a down-payment of $6,000.00.

The contract for the sale and purchase of the hotel was signed by the parties on August 9, 1956. Later in that same month, the defendant executed the note and trust deed, paid the $6,000.00 and took possession of the hotel property.

Defendant Faye Handy made extensive repairs which cost her some $4,400.00 but remained in possession of the property only a few months until the first of November. The evidence showed that she planned to have her

4

daughter, the defendant Patricia Cassell, and her son-in-law, who is not a party, help her operate the hotel. It was soon apparent, however, that the income from the hotel was highly inadequate and did not even provide support for herself, and when this became apparent the daughter and son-in-law left, and soon thereafter plaintiff was required to close down. It was not until after she had actually closed it that the deed was delivered and recorded by defendant.

The present action was filed August 7, 1957, and the first written notice of rescission which was given by the defendant was some 30 days later in the answer. It should be here noted that present counsel did not represent defendant during this period, having entered their appearance after the trial court had entered its judgment, and after execution and sale. They first appear in connection with the designation of the record on error.

After abandonment of the premises by the defendant, plaintiff was required to pay additional insurance premiums so as to continue the protection. Defendant recorded the deed and soon after that employed a realtor to sell the property. In this connection the list price was $40,000.00. Defendant ceased making payments after November 1956, and when plaintiff's attorney threatened to take action, defendant's attorney wrote a letter in which he asked more time be given to sell the property for plaintiff.

In support of her contention that the transaction was induced by the fraudulent representations of the plaintiff, defendant relies on the following: The representation of the plaintiff that she had realized the sum of $150.00 per week from the rooms; that she had enough rentals during the winter months to pay expenses; that during the year 1953 she had made $12,000.00 from the operation; that she had no records which could serve to verify her representations. With the exception of that dealing with the $12,000.00, these representations were admitted by the plaintiff. With respect to that one,

plaintiff's version was that she had *grossed* $12,000.00 in 1953. However, even this was not true. The evidence before the court showed that in this year the gross receipts were approximately $10,000.00 and that the net taxable income was less than $1,000.00. Judging from the experience of defendant during the period of her occupancy, the hotel was not only unprofitable but produced a very substantial loss. The income from the bar was virtually nothing. There was no food business, and there was little or no income from tenants.

In holding for the plaintiff, the trial court made general findings as to the execution of the instruments in suit and the default, and concluded that a just indebtedness existed. The court, accordingly, directed entry of judgment for the plaintiff and ordered special execution and public sale by the sheriff. Judgment in the amount of $34,000.00, together with interest in the amount of $4,552.20 plus an attorney fee in the amount of $1,500.00, and $466.80 insurance was entered.

Notwithstanding that the cause was tried to the court, there was a failure to enter findings of fact on the principal issues, those which dealt with the elements of fraud as a defense and fraud as a basis for a rescission. The court merely entered the following conclusions of law:

"* * * 2. That the Defendants have failed to prove by clear, concise and indubitable evidence the elements necessary to sustain their allegations of false representations.

"3. That the Defendants have repeatedly affirmed said contracts by their acts subsequent to the time when they should have known the true situation with reference to said property."

Defendant's contentions are summarized as follows:

1. That the evidence established a clear and convincing case of fraud.

2. That the circumstances were sufficient to constitute a case of constructive fraud.

6

3. That the court erred in holding that there was a waiver or affirmance of the transaction by the plaintiff.

4. That the unfairness of the sheriff's sale following judgment itself attests to the fraudulent character of the transaction.

I.

*Sufficiency of the evidence of fraud to constitute a defense or to justify rescission.*

There is little dispute concerning the falsity of the statements made by the defendant for the purpose of inducing the sale. Plaintiff admits that she represented to defendant that she *grossed* $12,000.00 in the year 1953. Defendant's testimony is that plaintiff represented that she "made" this sum of money. Since, however, neither of these statements was true, as indicated by the defendant's tax returns, it would seem that the difference between the defendant's version and that of the plaintiff is merely one of degree; it does not gainsay the falsity of the statement even though it might bear on the intent of the defendant to defraud.

There is also little doubt that defendant represented that she had been clearing $150.00 per week from the rooms which she had rented and that she had realized sufficient revenue from the rentals to pay expenses during the winter months. There is also testimony that the defendant represented that she had no records, whereas, the testimony of the defendant Patricia Cassell on rebuttal is to the effect that she observed the defendant burning registration cards.

As to the *materiality* of the misrepresentations and reliance of the plaintiff thereon, it is strenuously argued by the defendant that the truth was readily apparent and consequently that plaintiff was not justified in purchasing the hotel and signing the note upon the basis of these statements, citing *Wheeler v. Dunn,* 13 Colo. 428, 22 Pac. 827.

Counsel in their brief argue:

"With reference to the apparent discrepancy concern-

ing the 1953 income of the hotel, it is doubtful that the defendants were concerned at all with the hotel's prior income under the management of an elderly lady who conceived of the hotel as a home rather than a place of business (FF. 245, 246). If the hotel's prior income had, in fact, been a material inducement to the transaction, certainly defendants would have inquired concerning the income for the years 1954, 1955 and 1956, immediately preceding the transaction. The fact that no such inquiry was ever made is conclusive of fact that any representation concerning the income of the hotel three years prior to the sale was not even a motive for the transaction much less the proximate and immediate cause thereof that is required for actionable fraud."

The law with respect to the necessity that misrepresentations be material, is correctly stated in *Wheeler v. Dunn,* supra, and the question is one on which reasonable minds could differ, and the court appears to have resolved it in favor of plaintiff.

■ As to the question of whether defendant could have justifiably relied on the representations which were made, plaintiff argues that circumstances were such as to excite the attention of defendant and thus require her to make an independent inquiry. They rely on *Bosick v. Youngblood,* 95 Colo. 532, 37 P. (2d) 1095. In that case a buyer commenced an inquiry, which if completed would have disclosed the truth, and it was there held that she was charged with the knowledge she would have obtained had she pursued it.

Plaintiff also points out that the defendant had the advice of her son-in-law, the husband of defendant Patricia Cassell, who had been assistant manager at the Antlers Hotel in Colorado Springs. She calls attention to the evidence indicating that defendant was induced, at least in part, by Mr. Cassell's advice. There was also evidence that the defendant and the plaintiff had become friends during a period of some two or three years prior to this transaction and that the defendant was relying

on the statements of plaintiff. Thus there was a dispute in the evidence which was resolved by the trial court.

We are constrained to conclude that these issues were disputed questions of fact and that the trial court was within its province in finding for plaintiff.

II.

*The question whether the defendant elected to affirm the transaction.*

The trial court ruled that "the defendants have repeatedly affirmed said contracts by their acts subsequent to the time when they should have known the true situation with reference to said property." The evidence is that the defendant closed up the hotel soon after the closing of the transaction. She did not forward to the plaintiff unequivocal notice electing to rescind the sale. Very soon after the hotel was closed the plaintiff was forced to pay additional insurance premiums and it was soon apparent to the plaintiff that the defendant was not going to operate the hotel. Furthermore, a letter was written by defendant's attorney in March of 1957 in which it was requested that the plaintiff be indulgent until the property "can be sold." This letter also stated that the property had been purchased with the understanding that defendant's son-in-law would operate it. It contained the further advice that the son-in-law had departed in September. The response to this letter by plaintiff's attorney stated that "I know that Mrs. Handy has run into some difficulty on this property and have been inclined to be as lenient as possible."

From the standpoint of fraud as a defense or rescission, it was incumbent on the defendant to promptly and unequivocally give notice of election to avoid the contract. 2 *Restatement, Contracts,* Sec. 480. This she failed to do.

It is apparent from the above analysis that defendant entered into an improvident and onerous contract. The property purchased failed to come up to defendant's expectations. This fact alone, however, does not justify

relieving her of the inequity which has resulted. Upon the basis of the record before us, we are powerless to set aside the findings of the trial court.

*The question of the validity of the sheriff's sale.*

By supplemental record on error, our attention is directed to the fact that plaintiff bought the property involved at sheriff's sale for the sum of $1,000.00. It is argued (in the Reply Brief) that this manner of pursuing the judgment gives character to defendant's contention that she was defrauded. Although we are unable to treat the transaction in the manner suggested by defendant, we do have the power to relieve defendant from the inequitable and unconscionable effects of the sheriff's sale.

It is to be noted that the sheriff observed the requirements of law and our comments are not intended as a criticism of the conduct of the trial court or of counsel. We merely point out that the consequences are so unconscionable as to demand that the sale be set aside.

The court awarded damages to the plaintiff in the amount of $40,519.00. This figure, as noted before, included the $34,000.00 owing on the note, $4,552.20 interest, $466.80 for insurance paid for by plaintiff, and $1,500.00 for attorney's fees. The court also ordered that the property which was secured by a deed of trust to the public trustee be sold at special execution by the sheriff of Teller County after thirty days' prior publication of notice of such sale and that the proceeds be applied first to the costs of the sale and then the balance to the judgment debt. A deed of trust may be foreclosed in court under our authority. *Neikirk v. Boulder Bank,* 53 Colo. 350, 127 Pac. 137. A supplemental record filed by the defendant indicates that the sheriff's sale was held and that the property was purchased by the plaintiff Emma Rogers for $1,000.00. The outcome then is that the plaintiff now has the hotel, the improvements to which alone cost $4,400.00, the down payment of $6,000.00, and in addition, has an unsatisfied judgment in excess of

$40,000.00. That such a result may have been obtained through strict adherence to legal procedures does not mitigate its obvious harshness. The words of Mr. Justice Bradley in *Graffam v. Burgess,* 117 U.S. 180, 186 (1886) are applicable here.

"It is insisted that the proceedings were all conducted according to the forms of law. Very likely. Some of the most atrocious frauds are committed in that way. Indeed, the greater the fraud intended, the more particular the parties to it often are to proceed according to the strictest forms of law."

 It is the traditional duty of a court of equity to safeguard the interests of a mortgagor in the foreclosure of his equity of redemption. This power has been summarized by the Supreme Court in these words:

"In the absence of legislation, courts of equity have exercised jurisdiction in suits for the foreclosure of mortgages to fix the time and terms of sale and to refuse to conform sales upon equitable grounds where they were found to be unfair or inadequacy of price was so gross as to shock the conscience."

*Home Building & Loan Association v. Blaisdell,* 290 U. S. 398, 446. See also *Honeyman v. Jacobs,* 306 U.S. 539; *Gelfert v. National City Bank of New York,* 313 U.S. 221. Similarly a court of equity possesses the power to examine an execution sale in the ordinary manner and to set aside an unconscionable sale. *Graffam v. Burgess,* supra; *Van Senden v. O'Brien,* 58 F. (2d) 689; *Ellis v. Powell,* 117 S.W. (2d) 225 (Mo.); *Kloepping v. Stellmacher,* 21 N.J. Eq. 328; *LaFitte v. Salisbury,* 43 Colo. 248, 95 Pac. 1065. The power to require confirmation of a foreclosure sale is inherent in a court of equity. 3 *Jones, Mortgages,* Sec. 2103. The requirement of confirmation constitutes an essential difference between a foreclosure sale and an execution in the ordinary manner. 1 *Glenn, Mortgages,* Sec. 92 at 557. The employment of the sheriff to carry out the foreclosure sale has been approved by

decision of this Court, *Scott v. Burlington State Bank,*
76 Colo. 582, 233 Pac. 835.

When, however, the sale is carried out through the
sheriff, a result such as that found in the present case is
possible. Therefore, in the face of such possibility, it is
incumbent on a court of equity to supervise the sale in a
manner such as that required by Rule 120, Rules of Civil
Procedure.

By proceeding as she did, plaintiff obtained a
decree which neither referred to the statutory right of
redemption, *Denver Brick and Manufacturing Co. v.
McAllister,* 6 Colo. 261, nor reserved the right of confir-
mation of the sale. The results which followed indicate
that the failure of the trial court to supervise the sale
has resulted in serious prejudice. In fairness to the trial
judge, it should be noted that the then attorney for
defendant did not move to set aside the sale. As we view
it, however, this fact should not operate to permit plain-
tiff to obtain a double recovery and thus transform a
claim for compensation into a highly profitable trans-
action. Although plaintiff is entitled to be made whole,
she does not have the right to use the courts for the pur-
pose of furthering an unconscionable enterprise.

The effect of our holding here is not to establish an
invariable rule for the conduct of foreclosure sales. We
merely recognize and apply traditional equitable prin-
ciples to a shocking and unconscionable condition. Where
a result such as the present one occurs or is threatened
the Court should remedy it or raise safeguards to pre-
vent it.

The sale of the property in question is hereby set
aside and the case remanded. Upon remand, the decree
should be amended so as to require the appointment of
appraisers in connection with the foreclosure sale. It
should also require a return and report of sale and
approval thereof by the trial court. If the trial court
deems it necessary, a hearing should be had so that the
court can be apprised concerning the actual value of the

property. It goes without saying that the trial judge should disapprove any sale at a price which bears no relationship to the actual value of the property.

The judgment is affirmed in part and reversed in part and the cause remanded for further proceedings consistent with the views herein expressed.