**UNITED STATES of America, Appellee,**

v.

**Domingo RUIZ, Defendant-Appellant.**

**No. 801, Docket 73–1217.**

United States Court of Appeals, Second Circuit.

Argued April 19, 1973.

Decided April 30, 1973.

J. Jeffrey Weisenfeld, New York City, for defendant-appellant.

Arthur J. Viviani, Asst. U. S. Atty. (Whitney North Seymour, Jr., U. S. Atty., S. D. N. Y., John W. Nields, Jr., Asst. U. S. Atty., on the brief), for appellee.

Before CLARK, Associate Justice,* WATERMAN and FEINBERG, Circuit Judges.

PER CURIAM:

Appellant Ruiz was convicted below of conspiracy to distribute heroin. The sole issue in this appeal is whether the government introduced sufficient non-hearsay evidence of conspiracy to justify the admission into evidence of hearsay statements of Victor Torres, an alleged co-conspirator, implicating Ruiz.

On April 18, 1972, undercover police officer Minichiello met Torres for the first time and offered to buy heroin. Upon learning that Minichiello had $1200, Torres led him to a Manhattan address where Torres spoke briefly to a group of people standing on the street beyond the officer's hearing. Torres returned to the car in which Minichiello was waiting and talked about future purchases. Torres spoke with the nearby group a second time and then got into the car with Minichiello. About 20 minutes later Minichiello observed appellant Ruiz standing ten feet from the car. Ruiz looked at Torres and nodded his head at him. At this point Torres stated to Minichiello: "That's my man. He's got the package." Torres left the car, joined Ruiz in front of the former's nearby apartment building, and the two entered together. One minute later Ruiz emerged from the building, followed by Torres a few seconds later. Torres summoned Minichiello from the car, and the two went up to Torres' second floor apartment, where a heroin sale was consummated.

On May 2, 1972, Torres made a second sale to Minichiello. They drove together to Torres' apartment building, where Torres left the car, entered his residence, and returned to the car. While the two waited, Ruiz passed by and nodded to Torres, who left the car without speaking to Ruiz and walked into his residence. Torres returned shortly and summoned Minichiello. They went to Torres' apartment, where Torres removed heroin from a cupboard and sold it to Minichiello for $1200.

When Torres was arrested on May 15, 1972, a search of his person turned up a slip of paper bearing the name "Mingo," Ruiz' nickname, and the telephone number "534–7972," almost identical to Ruiz' number at the time (534–7971).

Ruiz argues specifically that the slip of paper was hearsay and therefore not relevant on the threshold question of whether there was a conspiracy. We disagree. The paper was not introduced to prove the truth or falsity of its contents. It was merely evidence supporting the inference that Torres knew Ruiz and anticipated calling him on the telephone. See United States v. Armone, 363 F.2d 385, 404 (2 Cir. 1966).

Ruiz argues generally that there was insufficient evidence of conspiracy, whether or not the slip of paper was hearsay. At the first sale Torres waited until Ruiz arrived to make the heroin sale. Ruiz signalled to him and the two went into Ruiz' residence for only one minute. Immediately thereafter, Torres brought Minichiello in and sold him heroin. Two weeks later a similar pattern of events occurred in

* Retired Associate Justice of the United States Supreme Court, sitting by designation.

connection with the second heroin sale. Torres waited until Ruiz appeared and signalled to him before he took Minichiello into his apartment and made the sale. This evidence was sufficient preponderance to warrant a finding of conspiracy. United States v. Geaney, 417 F.2d 1116, 1120 (2 Cir. 1969), cert. denied sub nom. Lynch v. United States, 397 U.S. 1028, 90 S.Ct. 1276, 25 L.Ed. 2d 539 (1970).

The judgment is affirmed.