The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Cissy TAYLOR, Defendant–Appellant.

No. 88CA0475.

Colorado Court of Appeals,
Div. III.

May 17, 1990.
Rehearing Denied June 28, 1990.
Certiorari Denied Jan. 28, 1991.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Wendy J. Ritz, Asst. Atty. Gen., Denver, for plaintiff-appellee.

Timothy A. Patalan, Durango, for defendant-appellant.

Opinion by Judge MARQUEZ.

The defendant, Cissy Taylor, appeals a judgment of conviction of 3 counts of first degree arson, 2 counts of third degree arson, 2 counts of conspiracy to commit arson, and 3 counts of use of a deadly weapon during the commission of first degree arson. We affirm.

The defendant and her husband, via a corporate entity, owned a bar in Durango, Colorado, called the Fifth Quarter Tavern. Another bar called the Party Time Lounge was also located in Durango. On February 17, 1986, an explosion occurred at the Party Time Lounge causing minor property damage. Explosions also occurred on April 28, 1986, and May 9, 1986, at the Fifth Quarter Tavern. Defendant was alleged to have arranged for Ray Bates and others to cause the explosions.

In connection with the subsequent investigation for arson and conspiracy, a search warrant, based upon an affidavit drafted by a Colorado prosecutor, was issued by a North Dakota court to obtain the defendant's telephone records. Another Colorado affidavit which had previously been used to support a search warrant in Colorado, and which purportedly was intended as an attachment, was neither referenced nor attached to the affidavit that was presented to the North Dakota court.

Pursuant to the search warrant, North Dakota officials seized the defendant's phone records from the telephone company, and the records were subsequently admitted into evidence.

I.

We reject defendant's challenge to the admission of telephone toll records based upon the asserted violation of her Colorado constitutional rights.

■ In determining the admissibility in the forum state, Colorado, of evidence obtained in the situs state, North Dakota, an exclusionary rule analysis is to be applied, rather than a traditional conflict of laws approach. *See People v. Porter*, 742 P.2d 922 (Colo.1987); W. LaFave, *Search & Seizure* § 1.5(c) at 116–117 (1987).

■ In contrast to the contention of error raised in *People v. Porter, supra*, defendant here asserts a constitutional violation and not simply the violation of a rule of criminal procedure. Thus, if there was a violation of the defendant's Colorado constitutional rights, then exclusion of the evidence would be mandated even though the evidence may have been properly seized under the laws of the situs state.

Telephone toll records, which record only those calls individually billed, are protected under Colo. Const. art. II, § 7, and, consequently, such records may be obtained by government officials only pursuant to a properly obtained search warrant. *People v. Corr*, 682 P.2d 20 (Colo.1984), *cert. denied*, 469 U.S. 855, 105 S.Ct. 181, 83 L.Ed.2d 115 (1984). Hence, if the affidavit underlying the warrant here was insufficient, the defendant's phone records were unconstitutionally seized pursuant to an invalid warrant and should have been excluded, unless the "good faith" exception to the exclusionary rule applies. *See* § 16–3–308, C.R.S. (1986 Repl.Vol. 8A); *People v. Deitchman*, 695 P.2d 1146 (Colo.1985).

Like the prosecution in *People v. Deitchman, supra*, the Colorado prosecutor conceded that the affidavit which was attached to the North Dakota search warrant was

entirely conclusionary and insufficient under any standard. Thus, the issue becomes whether the good faith exception applies.

Since the record supports a showing that the evidence was obtained pursuant to, and within the scope of, a search warrant, prima facie evidence exists that the conduct of the North Dakota officers was performed in the reasonable good faith belief that it was proper. *See* § 16–3–308(4)(b), C.R.S. (1986 Repl.Vol. 8A).

■ However, the good faith exception will not apply if: 1) the affidavit was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; 2) the warrant was so facially deficient (*e.g.*, failure of the warrant to state with particularity the place to be searched or the things to be seized) that the executing officers cannot reasonably presume it to be valid; 3) the magistrate or judge in issuing the warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his or her reckless disregard of the truth; or 4) the issuing magistrate wholly abandoned his or her judicial role. *See United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984).

■ Defendant argues that the prosecution knew that a warrant so lacking in probable cause cannot qualify as being issued in "good faith"; that the North Dakota court knew a search warrant was required to introduce the phone records in Colorado; and that the North Dakota court knew not only that conclusionary affidavits were insufficient to support the issuance of a warrant but also that the warrant could not be issued in good faith. We disagree.

The affidavit in this case states, *inter alia*, that:

1) The affiant was informed that the defendant and Ray Bates had been charged with several counts of arson and conspiracy;

2) Witnesses told investigators in Colorado that long distance phone calls from defendant in Carrington, North Dakota, were made to other participants in furtherance of the conspiracy;

3) Ray Bates' former wife told a Colorado investigator that such phone calls were made to Ray Bates from September 1985 until December 1986; and

4) Under Colorado law, a search warrant is required to seize long distance telephone records.

■ The affidavit here is not "so lacking" in indicia of probable cause as to render official belief in its existence entirely unreasonable. *See* § 16–3–303, C.R.S. (1986 Repl.Vol. 8A); *People v. Grady*, 755 P.2d 1211 (Colo.1988). Moreover, defendant does not dispute that the warrant articulates the place to be searched and the records to be seized. Nor does defendant allege that the affiant lied to or misled the magistrate. And, we cannot say that the North Dakota magistrate "wholly abandoned his or her judicial role" in issuing this search warrant. Hence, none of the exceptions to the good faith test noted in *United States v. Leon, supra*, concerning the issuance of the warrant apply.

As the U.S. Supreme Court stated in *Leon:* "[I]n the absence of an allegation that the magistrate abandoned his detached and neutral role, suppression is appropriate only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause."

As to the actions of the Colorado authorities, the trial court here found: "[T]he officers did not intend to cut corners nor obtain a warrant without probable cause." While the prosecutor was less than careful in drafting the affidavit, nothing in the record indicates that his conduct rises to the level of intentional and material misrepresentation or "recklessness," both requiring some *conscious* disregard of constitutional requirements. *See* § 16–3–308(4)(b), C.R.S. (1986 Repl.Vol. 8A); *see also* § 18–1–501, C.R.S. (1986 Repl.Vol. 8B).

Accordingly, the record supports a conclusion that Colorado authorities did not try to mislead North Dakota officials and that the prosecutor and North Dakota officers harbored an objectively reasonable be-

lief in the existence of probable cause. The affidavit itself states that the phone records could not be constitutionally obtained without first securing a search warrant. Thus, we conclude that the telephone records were properly admitted under the "good faith" exception. *See People v. Deitchman, supra* (Erickson, C.J., and Dubofsky, J., concurring.)

## II.

■ Defendant also challenges the admissibility of certain telephone records from pay phones located in both Durango, Colorado, and North Dakota. These records indicate that phone calls were made to the residence of Ray Bates in Utah. Defendant argues that there was a lack of foundation connecting her to the calls made from these pay phones and that, therefore, the pay phone records were irrelevant. We disagree.

The relevancy of the pay phone records depends upon whether the defendant can be linked to the calls made from the pay phones. The proper course for the trial court was to admit the phone records if there was evidence sufficient to support a finding that it was the defendant who placed these calls. CRE 104(b).

■ Were the jury to find that the defendant in fact placed the calls at the times in question, then it is proper circumstantial evidence of a conspiracy. *See State v. Branch,* 288 N.C. 514, 220 S.E.2d 495 (1975) (in conspiracy case, testimony of telephone company accounting manager concerning a call from a pay telephone to co-conspirator's home was relevant to show close contact between defendants and was admissible as circumstantial evidence of conspiracy, given that defendant had access to pay phone at the time of the call).

■ While the prosecution conceded that it did not know who actually made the phone calls from Durango, the record establishes that the defendant was in Durango at that time, and was residing within one or two blocks from the pay phones in question. Also, the calls were placed to the residence of Ray Bates just prior to the explosions at issue.

As for the calls from North Dakota, Ray Bates' former wife testified that she and her ex-husband received phone calls from the defendant while defendant was staying in North Dakota and that they did not know anyone else residing in North Dakota. Further, witnesses testified that the defendant had access to the pay phone in question at the time the calls were placed.

This evidence is sufficient to support a finding that it was the defendant who placed these calls. Further, it was only the fact that phone calls were made which was admitted, not evidence of the contents of those calls.

We find no merit to defendant's contentions that the admission of the entire phone record, including prepared summaries, violated CRE 403 and that such evidence was cumulative, prejudicial, and misleading.

■ Unless there is an abuse of discretion, the trial court's ruling that the probative value of proffered evidence outweighs its prejudicial effect will not be disturbed. *People v. Young,* 710 P.2d 1140 (Colo.App. 1985). Admission of cumulative evidence is within the trial court's discretion, and its ruling thereon will not be overturned unless there was an abuse of that discretion. *People v. Sexton,* 192 Colo. 81, 555 P.2d 1151 (1976).

## III.

Defendant next alleges error by the trial court's admission of out-of-court statements made by her alleged co-conspirator, Ray Bates. Defendant asserts that in order to satisfy the defendant's right to confront and cross-examine the witnesses against her, the People must first either produce the declarant or demonstrate that he is "unavailable."

■ Statements by a co-conspirator of a party during the course and in furtherance of the conspiracy may be admissible under CRE 801(d)(2), *Williams v. People,* 724 P.2d 1279 (Colo.1986), provided there is also a showing of reliability. *Nunez v. People,* 737 P.2d 422 (Colo.1987).

In *United States v. Inadi*, 475 U.S. 387, 106 S.Ct. 1121, 89 L.Ed.2d 390 (1986), the U.S. Supreme Court indicated that if an alleged co-conspirator asserts his Fifth Amendment privilege, he is "unavailable," and held that in any event a preliminary showing of "unavailability" is not required to admit *co-conspirators'* out-of-court statements. Therefore, we address the other requirement: whether the statements bear sufficient indicia of reliability.

■■■ The trial court may consider, in addition to other evidence, the statement of an alleged co-conspirator in determining whether the prosecution established the evidentiary conditions for admitting the statement under CRE 801(d)(2)(E). *Bourjaily v. United States*, 483 U.S. 171, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987); *People v. Montoya*, 753 P.2d 729 (Colo.1988). While the statement itself may be considered, there must also be some evidence, independent of the alleged co-conspirator's statement, establishing that the defendant and the declarant were members of the conspiracy. *Montoya, supra.*

■■■ There was evidence that defendant was a co-owner of one of the taverns. Witnesses testified that the tavern business was losing money and that the insurance on defendant's tavern was about to be cancelled. Therefore, defendant had a motive. The telephone records circumstantially indicating contact between the defendant and Ray Bates immediately before the explosions support a finding that defendant was a member of this conspiracy. Finally, Bates' ex-wife testified that she received moneys from defendant even before the explosion at the Party Time. Hence, we conclude that the record supports findings, apart from Bates' statement, that defendant was a member of this conspiracy, that Bates' statements were made in the course of and in furtherance of a conspiracy, and that the statements bore sufficient indicia of reliability to be admitted.

### IV.

■■■ Defendant, relying on *Alonzi v. People*, 198 Colo. 160, 597 P.2d 560 (1979), argues that a tape recording of conversations between Ray Bates and her was erroneously admitted without proper foundation or relevance being first established.

The admissibility of tape recordings will not be disturbed on appeal absent a showing of a clearly insufficient foundation. *Alonzi, supra; People v. Quintana*, 189 Colo. 330, 540 P.2d 1097 (1975). We hold that, under the evidence presented, the trial court did not abuse its discretion in admitting the recordings.

Here, one of the arresting officers testified that he seized the tape in question from Bates' residence, and a witness identified one of the voices on the tape as that of the defendant. The evidence also demonstrated that Bates recorded his phone calls, and that the defendant admitted that the tape was in the same condition as when it was found. Further, the tapes were relevant to show the relationship and contact between the defendant and Bates. Hence, the trial court did not abuse its discretion in admitting the tape recordings as they were probative of whether defendant was a member of a conspiracy. *See Alonzi, supra.*

### V.

Defendant also claims that the trial court erred in admitting photographs taken in Bates' home as well as a handwritten note which was found in the home and which contained the defendant's name, address, and phone number. Defendant claims there was no foundation established and that these items were irrelevant. Again, we disagree.

■■■ One of the arresting officers who was present at Bates' residence testified that the photographs were fair and accurate representations of what was found there. Therefore, a foundation for admission of the photographs was properly established. *See People v. Reynolds*, 194 Colo. 543, 575 P.2d 1286 (1978).

■■■ We conclude that the note containing defendant's name, North Dakota address, and telephone number that was found at the alleged co-conspirator's home,

even though it may not have been in the handwriting of the defendant or any other alleged co-conspirator, tended to make it more probable that defendant was linked to this conspiracy. CRE 401. Such evidence tends to prove that Bates knew the defendant and may have anticipated calling her on the phone. *See United States v. Ruiz*, 477 F.2d 918 (2d Cir.1973), *cert. denied*, 414 U.S. 1004, 94 S.Ct. 361, 38 L.Ed.2d 240 (1973).

While the note was not found until almost a year after the last explosion, we agree with the People that the remoteness in time goes to the weight to be given the note and not the admissibility. *See People v. Trefethen*, 751 P.2d 657 (Colo.App.1987).

## VI.

We also reject defendant's contention that it was error to deny her motion to sever the different counts concerning the explosions at the Party Time Lounge from those at the Fifth Quarter.

■ Crim.P. 8(a) authorizes the joinder of offenses based on a series of acts arising from the same criminal episode. Joinder of offenses committed at different times and places is permissible provided they are part of a schematic whole. *People v. Aalbu*, 696 P.2d 796 (Colo.1985).

Under Crim.P. 14, a defendant may move to sever counts so joined when it appears that such joinder is prejudicial, but such a motion is addressed to the sound discretion of the trial court, whose decision will be reversed only upon a showing of abuse of discretion. *People v. Aalbu, supra*. Abuse of discretion is found when it is demonstrated that the joinder caused actual prejudice to the defendant, not merely a difference in trial strategy, and that the trier of fact was not able to separate the facts and legal principles applicable to each offense. *People v. Pickett*, 194 Colo. 178, 571 P.2d 1078 (1977).

■ Crimes committed simultaneously or in close sequence, crimes that occur in the same or closely related place, and acts that form part of a schematic whole involve interrelated proof. *People v. Rogers*, 742

P.2d 912 (Colo.1987). Here, while the three different explosions occurred within a time frame of three months and at two different locations, the offenses were closely related enough in time and place such that joinder was permissible. *See People v. Walker*, 189 Colo. 545, 542 P.2d 1283 (1975).

■ That the defendant's specific motive for each explosion may have been different (*i.e.*, eliminating competition versus collecting insurance) is of no consequence since either motive would improve the defendant's financial position. Moreover, defendant has not demonstrated that the jury was unable to separate the facts and legal principles applicable to the different counts. *See People v. Allen*, 42 Colo.App. 345, 599 P.2d 264 (1979) (although offenses occurred on three different dates and concerned three different victims, it was not error to deny severance of counts where common scheme was shown).

## VII.

■ Lastly, defendant asserts the court committed reversible error in the manner by which it instructed the jury concerning the similar transaction evidence. Defendant argues that the trial court erred in failing to instruct the jury concerning the limited purpose applicable to the evidence of the other counts contemporaneously with the offering of that evidence. We disagree.

Our supreme court has stated that if the requirements of *Stull v. People*, 140 Colo. 278, 344 P.2d 455 (1959) are applicable, the better practice would be to require the trial court to issue a contemporaneous limiting instruction regardless of whether it is requested. *People v. Scheidt*, 182 Colo. 374, 513 P.2d 446 (1973). However, it has refused to hold that the trial court's failure, *sua sponte*, to so instruct is plain error. *People v. Gladney*, 194 Colo. 68, 570 P.2d 231 (1977), *cert. denied*, 434 U.S. 1038, 98 S.Ct. 776, 54 L.Ed.2d 787 (1978).

Here, the defendant failed to make a contemporaneous request for such a limiting instruction. Accordingly, we conclude that the trial court's failure to give a con-

temporaneous limiting instruction was not plain error and that the instruction given adequately informed the jury of the limited purposes for which certain evidence could be considered for each count.

Judgment affirmed.

STERNBERG and VAN CISE *, JJ., concur.