NATIONAL CANADA CORPORATION, a Delaware corporation, f/k/a MBC Financial Services Corporation, Plaintiff–Appellee and Cross–Appellant,

v.

John P. DIKEOU, George P. Dikeou, the Panayes John Dikeou Trust, and the Devon Anne Dikeou Trust, Defendants–Appellants and Cross–Appellees.

No. 92CA0029.

Colorado Court of Appeals, Div. V.

July 29, 1993.

Rehearing Denied Aug. 26, 1993.

Certiorari Denied March 7, 1994.

Kirkland & Ellis, Andrew J. Petrie, Cris D. Campbell, Denver, for plaintiff-appellee and cross-appellant.

Gueck & Mohney, P.C., Jay L. Gueck, Dallas, TX, for defendants-appellants and cross-appellees.

Opinion by Judge DAVIDSON.

In an action for a deficiency judgment, defendants, John P. and George P. Dikeou, the Panayes John Dikeou Trust, and the Devon Anne Dikeou Trust, appeal from the judgment entered on a jury verdict in favor of plaintiff, National Canada Corporation (NCC), and NCC cross-appeals. We affirm in part and reverse in part.

The following facts are undisputed. This claim arose as a result of defendants' default on promissory notes for $9,000,000 executed by defendants to NCC, which notes were secured by deeds of trust on four parcels of real estate. NCC, in deciding to foreclose on the properties pursuant to a power of sale, retained the company KPMG Peat Marwick (Marwick) to provide independent appraisals on the properties. On the basis of these appraisals, which totaled approximately $6,400,000, and after making certain deduc-

tions, NCC bid $5,274,320.30 at the foreclosure sale and acquired all four properties. Defendants did not exercise their right of redemption.

Thereafter, NCC brought this suit to obtain a personal judgment against defendants on the notes. In its complaint, NCC alleged that the debt, including principal and interest, totaled $10,471,658.46 and sought to recover a $5,905,243.33 deficiency on the defaulted loan.

In their answer, as relevant here, defendants asserted that NCC was not entitled to the full $5,905,243.33 deficiency because NCC had purchased the properties through bids that were so far below the properties' fair market value as to be unconscionable.

After trial, at which the parties presented conflicting evidence as to the fair market values of the properties at the time of foreclosure, the jury returned a $2,750,000 verdict for NCC.

## I.

Defendants assert several contentions of error regarding the trial court's instruction on unconscionably low bids. We perceive no reversible error.

The instruction at issue states:

It is an affirmative defense to an action for recovery of a deficiency after a foreclosure sale that the amount bid by the creditor at the foreclosure sale was so low as to shock the conscience of the jury.

In this connection you are instructed that a lender has no obligation to bid the fair market value at a foreclosure sale. However, as stated above, if the price bid is so low as to be shocking to one's reasonable sense of basic fairness, then the jury may take this into account in determining the amount of deficiency, if any, to be awarded the lender.

## A.

In giving this instruction, the trial court refused a related instruction tendered by defendants which stated that plaintiff had the burden of proving that it had bid the fair market value. On appeal, defendants, relying solely on *Moreland v. Marwich, Ltd.*, 629 P.2d 1095 (Colo.App.1981), *rev'd on other grounds*, 665 P.2d 613 (Colo.1983), argue that, if NCC was to be entitled to any deficiency whatsoever, as part of its case-in-chief, it was required to prove generally that its bid was fair and proper and more specifically that it bid the fair market value. Thus, they contend that the trial court erred by giving this instruction erroneously placing the burden on defendants to prove that NCC's bid was unconscionably low. We disagree.

When, as here, there is a power of sale foreclosure, the sale price of the property determines the amount to be applied upon the debt. If, after such application, there remains a balance, the creditor may sue for that deficiency in an action at law. *See* G. Nelson, *Real Estate Finance Law* § 8.1 (1985); *United Bank v. One Center Joint Venture*, 773 P.2d 637 (Colo.App.1989).

Generally, that price for which the property sold at the foreclosure sale is the conclusive measure of the deficiency. *United Bank v. One Center Joint Venture, supra; see Duke v. Daniels*, 660 S.W.2d 793 (Tenn. App.1983) (presumption that the sale price at a public auction is fair).

However, the defendant may challenge the deficiency amount by asserting an affirmative defense that the sale was "not conducted in good faith or in a strictly fair manner." *United Bank v. One Center Joint Venture, supra*, at 640. The burden is on defendant to prove that defense. *Gale v. Rice*, 636 P.2d 1280, 1282 (Colo.App.1981) (in an action to collect a deficiency on a judgment, burden was on defendant to show that "plaintiff's actions were deliberately undertaken to subject him to a large deficiency"); *see Duke v. Daniels, supra* (to overcome presumption that sale price is fair, burden is on defendant to show gross inadequacy); *see also Illini Federal Savings & Loan Ass'n v. Doering*, 162 Ill.App.3d 768, 114 Ill.Dec. 454, 516 N.E.2d 609 (1987); *Regional Investment Co. v. Willis*, 572 S.W.2d 191 (Mo.App.1978).

Thus, a plaintiff must establish the amount of the debt, the sale price, that the sale price was applied to the debt, and the resulting deficiency. That deficiency is con-

clusive unless the defendant pleads and proves that the sale was not conducted in a strictly fair manner. *United Bank v. One Center Joint Venture, supra; see Duke v. Daniels, supra.* If the defendant proves that the sale was unfair, then the amount of deficiency is a question of fact to be determined by the jury. *See United Bank v. One Joint Venture, supra; see also Regional Investment Co. v. Willis, supra.*

Here, defendants asserted the affirmative defense that NCC's bid was unfair because it was unconscionably low. Defendants, therefore, had the burden to prove the alleged unfairness, *see Gale v. Rice, supra,* and hence, the trial court did not err by so instructing the jury.

Contrary to defendants' assertion, *Moreland v. Marwich, Ltd., supra,* does not require a different conclusion. Specifically, defendants reference the following excerpt from *Moreland v. Marwich, Ltd., supra,* at 1097:

> There is nothing improper in a foreclosing creditor bidding in the amount of its debt. [When] he is not seeking a deficiency judgment, and bids the full amount of the debt, he is not required to bid the fair market value of the property.

■ Defendants argue that the corollary to this, which was stated in one of their tendered instructions, is that if a foreclosing creditor is seeking a deficiency judgment, then it must prove that it bid the fair market value. We disagree.

In *Moreland,* a creditor, and thereafter a junior lienor through its right of redemption, acquired certain property at the foreclosure sale for approximately $20,000. The stipulated fair market value was $100,000. The debtor, in an action seeking additional time to redeem from the foreclosure sale, alleged that its right to due process was violated in the C.R.C.P. 120 hearing. The trial court agreed, set aside the junior lienor's redemption and the sale on which it was based, and extended the time for debtor's cure or redemption.

On appeal, this court reversed. The supreme court, deciding that the trial court had acted within its discretion, reinstated the trial court's judgment. *Moreland v. Marwich, Ltd.,* 665 P.2d 613 (Colo.1983).

As pertinent here, the debtor also had asserted that the sale price was grossly and unconscionably below the fair market price. The supreme court held that the $80,000 disparity was not controlling, but merely was "an appropriate factor to consider in determining whether an [extension] period should be allowed for equitable reasons." *Moreland v. Marwich, Ltd.,* 665 P.2d 613, 619 (Colo. 1983).

In this light, we interpret the excerpt referenced by defendants to mean that if the foreclosing creditor bids neither the fair market value nor the debt or is seeking a deficiency judgment, these are additional factors relevant to a defendant's defense, but are not determinative standing alone. *See Davis Manufacturing & Supply Co. v. Coonskin Properties,* 646 P.2d 940 (Colo.App.1982); *cf. Hawthorne v. Assured Premiums Corp.,* 472 P.2d 715 (Colo.App.1970) (not selected for official publication).

Similarly, we conclude that, in a deficiency action, a creditor is not required to prove that it bid fair market value, but its failure to so bid, together with other factors, may be evidence of defendant's claim of unfairness. *See United Bank v. One Center Joint Venture, supra.*

### B.

Defendants rely on *Chew v. Acacia Mutual Life Insurance Co.,* 165 Colo. 43, 437 P.2d 339 (1968), and *United Bank v. One Center Joint Venture, supra,* to assert next that the trial court erred by failing to instruct the jury that it could refuse to award any deficiency if it found the bid to be unconscionably low. We disagree.

As is pertinent here, in *Chew,* the debtor sought to have the court, in equity, set aside a foreclosure sale and the resulting entry of deficiency judgment. On evidence that, before bidding, the creditor had investigated the debtors' financial condition specifically to determine that it could successfully collect a substantially large deficiency from debtors, our supreme court found that the creditor's bid was not made in good faith and, thus,

that the debtors were entitled to have the sale set aside and a new sale conducted.

■ Here, however, the action is at law for recovery of damages. And, it is the jury's function to determine what damages were incurred. Accordingly, the trial court properly instructed the jury to award NCC its claimed damages or, if it found the bids to be unconscionably low, to determine the actual damages, if any, incurred by NCC.

■ Nonetheless, by their tendered instruction, defendants sought to have the jury ignore actual damages if it found that NCC's bid was unconscionably low. However, it is not within the authority of the jury to act in equity or to set aside that which is owed; nor did defendants ask the trial court to exercise its equitable powers to grant such remedy. Thus, in this regard, *Chew* is inapplicable.

In *United Bank v. One Center Joint Venture, supra,* in a deficiency action, this court held that the trial court properly denied the creditor bank's motion for directed verdict because there was conflicting evidence as to whether the creditor's bid was made in good faith. The court upheld the jury's award of zero damages, noting that there were "substantial differences" in the appraised value of the land and that there was competent evidence to support the debtor's defense that the bank, in calculating its foreclosure bid, intentionally duplicated deductions already factored into the appraisal on which it relied.

Although the jury in *United Bank* awarded zero damages, contrary to defendants' contention, we do not read that case to stand for the proposition that a jury has the power to ignore proven damages whenever it finds a creditor's conduct to be fraudulent. Rather, it appears that the jury in *United Bank,* taking into account the substantially different appraisals and the necessary adjustments for the duplicated deductions, determined that the creditor had suffered no deficiency at all. *United Bank, supra,* at 639 ("no valid deficit remained"); *see Regional Investment Co. v. Willis, supra* (if trier of fact finds bid was inadequate and creditor intended to create a deficiency, then amount of damages must be based on factors others than price for which property was sold).

■ Moreover, in contrast to both *Chew* and *United Bank,* here there were no allegations or evidence of fraud by NCC. Thus, such an instruction, even if correct, was not warranted. *See Koehn v. R.D. Werner Co.,* 809 P.2d 1045 (Colo.App.1990).

Furthermore, we observe that the jury here was not precluded from awarding zero damages. The jury was told that:

> [I]f the price bid is so low as to be shocking to one's reasonable sense of basic fairness, then the jury may take this into account in determining the amount of deficiency, *if any,* to be awarded the lender. (emphasis added)

On conflicting evidence as to the fair market values—some of which would have resulted in no deficiency—the jury determined that NCC had sustained $2,750,000 damages.

On this record, we perceive no error.

## C.

We also disagree with defendants' contention that the instruction given by the trial court left the jury without any guidance relating to what constitutes an unconscionably low bid.

■ An unconscionable bid is one that, under the totality of the circumstances, is so unfair as to shock the conscience of the factfinder. *Chew v. Acacia Mutual Life Insurance Co., supra.* For a bid to be unconscionably low, the inadequacy of price must be "so gross as to shock the conscience." *Handy v. Rogers,* 143 Colo. 1, 10, 351 P.2d 819, 824 (1960).

Here, the instruction given by the trial court explained that the jury, in deciding damages, was to consider whether "the amount bid by the creditor at the foreclosure sale was so low as to shock the conscience of the jury." We conclude that this portion of the instruction is a correct statement of law and defendants do not argue otherwise.

■ They do argue, however, that the court also should have given their more specific tendered instruction which stated in relevant part:

[I]f the plaintiff intentionally bid less than fair market value for any of the properties sold at the foreclosure sales in order to subject the defendants to an unfair or excessive deficiency judgment, this would be one reason to find the plaintiff's bid for that particular property unconscionable.

The trial court refused this instruction, noting that there was no evidence of fraud by NCC or of intentional underbidding to subject defendants to a deficiency judgment. We perceive no error.

While this tendered instruction is a correct statement of law, *see United Bank v. One Center Joint Venture, supra,* from our review of the record, we conclude that the evidence, as a matter of law, would not support a finding that NCC deliberately underbid so as to subject defendants to a deficiency judgment.

Defendants appear not to have litigated this issue, nor was it asserted in their pleadings, in their disclosure statement, or in their statements to the jury. Rather, their claims of unconscionability were based on the disparity between the fair market values of the properties and NCC's bids, as well as on other, more general complaints about NCC's conduct in managing their account. This was also the nature of their evidence.

Whether the bid was grossly inadequate—the issue as articulated by defendants—is a different question from whether a creditor intentionally bid low for the specific purpose of subjecting defendants to a deficiency. Although the latter issue can be relevant in determining unconscionability, *see Chew v. Acacia Mutual Life Insurance Co.,* here, defendants simply did not assert that NCC intended to create a deficiency. *See Koehn v. R.D. Werner Co., supra* (an instruction should not be given which creates an issue of fact not supported by the evidence).

To the extent that defendants infer that NCC's unquestioned acceptance of Marwick's independent appraisals as a basis for its bid was bad faith, in our view this falls far short of NCC deliberately underbidding "in order to subject the defendants to an unfair or excessive deficiency judgment" as per defendants' tendered instruction. This is especially so in light of the fact that defendants did not allege that NCC had acted fraudulently or that the sale itself was in any way irregular.

We conclude, therefore, that it was not error for the trial court to refuse defendants' tendered instruction which concerned issues not raised by defendants nor supported by evidence.

■ Moreover, even if we assume that it was error for the trial court to fail to give this tendered instruction, we conclude that such error was harmless.

The jury was instructed:

You shall award as actual damages the amount [of] $5,905,243.33, except as stated in the next paragraph.

If you find that one or more of [NCC's] bids were unconscionably low, then you must determine the amount of [NCC's] damages by determining what the proper bid (or bids) should have been. If you find that the total of the proper bid (or bids) exceed the total amount due [NCC], then you shall find in favor of [defendants], but shall not award them any damages.

Because the jury could not award less than $5,905,243.33 unless it found one or more of NCC's bids to be unconscionably low, and because it awarded only $2,750,000, we infer that the jury found one or more of NCC's bids to be unconscionably low.

Upon finding unconscionability, the jury was required to determine, based on the evidence, what damages were actually incurred by NCC. As we have discussed, however, it could not award less than what was owed. Thus, whether the jury based its finding of unconscionability on only one or on a multiple of factors, its determination of NCC's actual losses would be the same.

Hence, we conclude that failure to give the jury further grounds for finding unconscionability was not prejudicial to defendants, and error, if any, was harmless.

## II.

■ Defendants next contend that the court erred by refusing to admit into evi-

dence the appraisal reports of two experts. We disagree.

The reports in question related to only one of the four properties. The trial court, in refusing to admit the reports, stated that to allow these experts to give their opinions orally as to the fair market value on the property and also to put their appraisal reports into evidence would be duplicative, allowing their evidence to come in twice. We infer that the court refused the reports based on CRE 403.

■ CRE 403 provides that evidence, although relevant, may be excluded if its probative value is substantially outweighed by considerations of needless presentation of cumulative evidence. A trial court's ruling on such issue is discretionary and will not be disturbed on review absent gross abuse. *People v. Taylor,* 804 P.2d 196 (Colo.App. 1990).

Here, both experts appeared at trial and offered their opinions of fair market value. In addition, they explained what factors they considered and what methodology they employed. The record reveals, and defendants concede, that the experts were thoroughly examined and cross-examined on the witness stand. Because, in large measure, the reports reiterated their oral testimony, we conclude it was not an abuse of discretion for the trial court to refuse the reports as duplicative. Nor can we see that there was any prejudice to defendants in light of the thoroughness of the examinations.

■ We note further that, in general, such reports are hearsay under CRE 801(c) and generally are not admissible except as provided under specific rules or statutes. CRE 802; *see Guzzardo v. Town of Greensburg,* 563 So.2d 424 (La.App.1990) (a report prepared by an expert is generally not admissible because it is hearsay); *cf. In re Marriage of Plummer,* 709 P.2d 1388 (Colo. App.1985).

■ Here, the reports were not offered as an exception under any statute or rule and were objected to as hearsay by NCC. Although the trial court did not exclude the reports as inadmissible hearsay, its ruling also would have been correct on that ground.

III.

Defendants contend that there was no competent substantial or sufficient evidence to warrant the $2,750,000 damages awarded by the jury. Specifically, they argue that since the jury clearly rejected the $6,400,000 appraisal by Marwick, it was required to base its verdict on the exact total of one of the other appraisals in evidence. Those amounts, defendants argue, would have resulted in little or no deficiency. We disagree that there was error.

■ In reviewing sufficiency of the evidence, our task is to determine whether the evidence, considered in the light most favorable to the prevailing party, is sufficient to support the jury's verdict. *Gossard v. Watson,* 122 Colo. 271, 221 P.2d 353 (1950). It is the right of the jury, not the province of this court, to determine the weight of the evidence and the credibility of witnesses and to draw all justifiable inferences of fact from the evidence. *Wilson v. Board of County Commissioners,* 703 P.2d 1257 (Colo.1985).

In finding values, a jury may, "in [its] sound discretion, discount the inflated appraisal of a witness before [it], with due allowance for both intentional and unintentional exaggeration or other error in the testimony." *Hollenbeck v. People ex rel. Churchill,* 95 Colo. 493, 497, 37 P.2d 387, 389 (1934).

■ Here, the jury was properly instructed that *it* was to determine what deficiency was appropriate under the circumstances, *see United Bank v. One Center Joint Venture, supra,* and it found that NCC's deficiency was $2,750,000. We can infer that, based on the evidence before it, the jury determined that the fair market value at the time of foreclosure was most accurately between Marwick's low appraisal performed in the early fall of 1990 and higher appraisals performed earlier. Viewing the evidence in the light most favorable to NCC, we conclude there was evidence, although conflicting, to support that the Marwick appraisal, despite errors, was generally valid and that the earlier, higher appraisals were not reflective of

the fair market values at the time of the foreclosure.

Supported as it was by the record, we find no error in the jury's award of $2,750,000.

## IV.

On cross-appeal, NCC contends that the trial court erred by denying its request for costs and attorney fees. Specifically, it argues that it is entitled to costs under § 13-16-104, C.R.S. (1987 Repl.Vol. 6A), C.R.C.P. 54(d), and under the terms of the loan agreements. It argues that the loan documents also provide for reasonable attorney fees. We agree.

In its order, the trial court stated in pertinent part:

Plaintiff has filed a bill of costs. No costs are awarded to either side as neither side prevailed. No attorney fees are awarded.

## A.

■ With regard to costs, pursuant to § 13-16-104, a plaintiff recovering debt or damages in an action *shall* have judgment to recover costs. *Cf. Gilmore v. Rubeck*, 708 P.2d 486 (Colo.App.1985) (§ 13-16-105, C.R.S. (1987 Repl.Vol. 6A) requires assessment of costs against plaintiff under particular circumstances).

■ Here, NCC recovered damages in this deficiency action and, thus, is entitled to recover costs pursuant to this statute. We reject defendants' argument that the language of § 13-16-122, C.R.S. (1987 Repl.Vol. 6A) (describing allowable costs) negates the mandatory nature of § 13-16-104 by permitting the court to refuse all costs. *See Audio-Visual Systems, Inc. v. Hopper*, 762 P.2d 696 (Colo.App.1988) (court abused its discretion by not awarding reasonable expert witness fees as an element of costs); *cf. Gilmore v. Rubeck, supra.*

■ Moreover, defendants' argument to the contrary notwithstanding, C.R.C.P. 54(d) does not require a different result. That rule provides that: *"Except when express provision therefor is made [in] a statute, ... costs shall be allowed as of course to the* prevailing party unless the court otherwise directs." (emphasis added)

■ Here, because express provision is made in a statute, *see* § 13-16-104, and since that statute requires that costs be assessed, C.R.C.P. 54(d) is inapplicable to the extent that it makes the awarding of costs discretionary. Insofar as C.R.C.P. 54(d) is applicable otherwise, we conclude that NCC is entitled to costs under that rule also.

■ A prevailing party is one that has succeeded upon a significant issue presented by the litigation and has achieved some of the benefits sought in the lawsuit. *Overland Development Co. v. Marston Slopes Development Co.*, 773 P.2d 1112 (Colo.App.1989).

Here, NCC brought this action seeking a deficiency against defendants. The jury found for NCC on the significant issue whether NCC was entitled to a deficiency. Further, even though the jury did not award NCC the entire $5,905,243.33 award which it sought, NCC did achieve $2,750,000 of those benefits.

We conclude, contrary to the finding of the court, that NCC was the prevailing party. Therefore, the trial court's denial of costs on this basis was error.

## B.

■ We also agree with NCC's contention that the trial court erred by denying its request for costs and attorney fees since the loan agreements provided entitlement to both.

In this regard, we note that defendants apparently do not disagree that costs and fees are authorized under the loan agreement, but argue that we should infer a finding by the trial court that "no attorneys' fees or costs were regarded as reasonable." We decline to do so and instead remand this matter to the trial court for a hearing on the reasonableness of the costs and fees incurred.

Insofar as NCC argues that defendants' appeal was baseless and that we should impose sanctions against them, we disagree.

The judgment is affirmed in all respects, except as to the denial of costs and attorney

fees. That portion of the judgment is reversed, and the cause is remanded for further proceedings on the issues of costs and attorney fees consistent with this opinion.

HUME and TAUBMAN, JJ., concur.