2014 COA 9

**TOP RAIL RANCH ESTATES, LLC, a Colorado limited liability company, Plaintiff–Appellee and Cross–Appellant,**

and

**Chris Jenkins, Plaintiff–Appellee,**

v.

**Ronald E. WALKER and Walker Development Company, a Colorado corporation, Defendants–Appellants and Cross–Appellees.**

and

**Walker Development Company, a Colorado corporation, Plaintiff–Appellant and Cross–Appellee,**

v.

**Top Rail Ranch Estates, LLC, a Colorado limited liability company and Christopher B. Jenkins, Defendants–Appellees and Cross–Appellants.**

Court of Appeals No. 12CA0227, Court of Appeals No. 12CA1326

Colorado Court of Appeals, Div. VII.

Announced January 30, 2014

Rehearing Denied March 20, 2014

Alpern Myers Stuart LLC, Gregory M. O'Boyle, Colorado Springs, Colorado; Mulliken Weiner Berg & Jolivet P.C., Steven K. Mulliken, Colorado Springs, Colorado, for Plaintiffs–Appellees and Cross–Appellant

Hall & Evans, L.L.C., Alan Epstein, David E. Leavenworth, Denver, Colorado; Mullans, Piersel & Reed, P.C., Shannon Reed, Pueblo, Colorado, for Defendants–Appellants and Cross–Appellees

Opinion by JUDGE TERRY

¶ 1 In *Top Rail Ranch Estates v. Walker*, No. 12CA0227 (the First Action), defendants, Ronald E. Walker and Walker Development Company, appeal the judgment entered for plaintiffs, Top Rail Ranch Estates, LLC (Top Rail), and Christopher B. Jenkins. Walker and Walker Development also appeal numerous orders, as well as the trial court's calculation of prejudgment interest awarded to plaintiffs.

¶ 2 In *Walker Development Company v. Top Rail Ranch Estates, LLC,* No. 12CA1326 (the Second Action), plaintiff, Walker Development, appeals the trial court's entry of summary judgment for defendants, Top Rail and Jenkins. Top Rail and Jenkins cross-appeal the trial court's order denying their C.R.C.P. 59(a)(4) motion.

¶ 3 As discussed in part III.A, below, we conclude, as an issue of first impression in Colorado, that the doctrine of claim preclusion does not bar claims that were permissive counterclaims in a prior action, where the adjudication of those claims would not result in inconsistent judgments or a deprivation of rights established by the first judgment.

¶ 4 For purposes of judicial economy, we address in one opinion the issues raised in the parties' appeals. We affirm in part, reverse in part, and remand with directions.

## I. Background and Procedural History

¶ 5 In this combined opinion, we consider several issues arising from a real estate transaction between Top Rail and Walker Development. In January 2005, Top Rail entered into a contract with Walker Development to purchase a subdivision of platted residential lots. Top Rail paid $200,000 of the purchase price in cash, and executed a promissory note payable to Walker Development for the balance of $1,000,000. As security for the note, the parties executed a deed of trust securing the subdivision lots. Top Rail and Jenkins, personally, later executed two additional promissory notes, both of which were secured by the original deed of trust.

¶ 6 Top Rail later obtained a loan from Cañon National Bank in order to make improvements in the subdivision. Walker Development agreed to subordinate its deed of trust to the bank's lien on all but two lots in the subdivision.

¶ 7 After the sale to Top Rail, Walker and Walker Development retained a substantial parcel of land next to the subdivision. In August 2008, Walker and Walker Development entered into an exploration agreement and option to purchase with a mining company for that adjacent parcel. The sale of the adjacent parcel was conditioned on a zoning change to Agricultural Forestry zoning, which would have allowed the purchaser to conduct mining on the property. Walker applied to the county to change the zoning. He told Jenkins that the zoning change was being sought for the purpose of establishing a conservation easement, and he made similar representations in his application to the county. Neither he nor Walker Development disclosed to Jenkins or the county the pending sale to the mining company. After the county approved the zoning change, the mining company completed the purchase. Several months later, the county learned that the mining company had purchased the property and reversed the zoning change.

¶ 8 After the sale of the adjacent property to the mining company, Top Rail was unable to sell lots in the subdivision, and it halted construction activities. Top Rail stopped making payments on its loan from the bank, and the bank foreclosed on its deed of trust. After the foreclosure sale, Walker Development redeemed the foreclosed property and obtained title to all but two lots in the subdivision.

¶ 9 The foreclosed property was encumbered by a superior lien of the Penrose Water District for unpaid water tap fees. After redeeming the property from foreclosure, Walker Development paid off the district's lien, which amounted to roughly $223,000.

¶ 10 In the First Action, Top Rail and Jenkins alleged claims of fraudulent concealment, intentional misrepresentation, negligent misrepresentation, breach of contract, and breach of the covenant of good faith and fair dealing. Walker and Walker Development counterclaimed, alleging that Top Rail and Jenkins had breached their deed of trust by encumbering the property with a water tap lien, and sought money damages in the amount that Walker Development had paid to satisfy the lien.

¶ 11 Following a jury trial, the trial court granted the motion of Top Rail and Jenkins for directed verdict on the counterclaim, resulting in the dismissal of the counterclaim, and denied motions of Walker and Walker Development for directed verdict on claims alleged by Top Rail and Jenkins.

¶ 12 The jury returned a verdict in favor of Top Rail on its claims for fraud, breach of contract, and breach of the covenant of good faith and fair dealing. The jury awarded $298,000 in damages for the fraud claim, $567,000 for the breach of contract claim, and $500,000 for the breach of the covenant of good faith and fair dealing claim. The court entered judgment on the verdicts, but reduced the damages award for the contract-based claims to $500,000, based on its finding that the damages for breach of contract were duplicative of those for the good faith and fair dealing claim.

¶ 13 Before trial in the First Action, Walker Development filed the Second Action against Top Rail, Jenkins, and the Public Trustee of Fremont County, claiming that Top Rail and Jenkins were in default on the three promissory notes and deed of trust they had executed in favor of Walker Development. It sought the remaining balance due on the notes, reimbursement for the amounts that Walker Development had paid to remove the water district lien, and foreclosure on the remaining parcels encumbered by the deed of trust that had not been subject to the bank's earlier foreclosure.

¶ 14 After the trial court entered final judgment in the First Action, the same court entered summary judgment in the Second Action in favor of Top Rail and Jenkins, concluding that Walker Development's claims were barred by the doctrine of claim preclusion.

## II. Appeal of the First Action

### A. Motions for Directed Verdict

¶ 15 In the First Action, both sides moved for directed verdict. The court granted the motion dismissing Walker Development's counterclaim, and denied all of the motions for directed verdict asserted by Walker and Walker Development.

#### 1. Walker Development's Counterclaim

¶ 16 Walker Development first argues that the court erred in granting the motion for directed verdict and dismissing its counterclaim. We reverse the directed verdict and remand for further proceedings on the counterclaim.

### a. Standard of Review

¶ 17 We review de novo rulings on motions for directed verdict. *Hildebrand v. New Vista Homes II, LLC*, 252 P.3d 1159, 1163 (Colo. App.2010); *MDM Grp. Assocs., Inc. v. CX Reinsurance Co.*, 165 P.3d 882, 885 (Colo. App.2007). "Where the motion concerns a question of fact, we consider whether the evidence, viewed in the light most favorable to the nonmoving party, compels the conclusion that reasonable jurors could not disagree and that no evidence or inference [therefrom] has been received at trial upon which a verdict against the moving party could be sustained." *Reigel v. SavaSenior-Care L.L.C.*, 292 P.3d 977, 982 (Colo.App. 2011) (internal quotation marks omitted); *accord Schuessler v. Wolter*, 2012 COA 86, ¶ 33, 310 P.3d 151. However, where the issue raised in the motion concerns a question of law, we may make an independent determination of that issue. *Health Grades, Inc. v. Boyer*, 2012 COA 196M, ¶ 17, —— P.3d ——; *Reigel*, 292 P.3d at 982.

### b. Analysis

¶ 18 In moving for directed verdict, Top Rail and Jenkins argued that after Walker Development redeemed the property from foreclosure, it was not entitled to sue them because Walker Development had no enforceable rights. They maintained that the deed of trust had been extinguished by the foreclosure and redemption process, and that the amount Walker Development had paid to redeem was discounted as a result of the senior water tap lien.

¶ 19 At least some of the argument on the motion for directed verdict took place off the record. The court's reasoning on the record is unclear. The court stated that the bank would not have been able to sue for the unpaid lien, and that Walker Development was therefore also prohibited from recovering the amounts it had paid to release the lien.

¶ 20 A provision of the parties' deed of trust allowed Walker Development to pay off any liens, including water assessments, that

encumbered the property. It further provided that if Walker Development elected to pay off such liens or assessments, the amounts paid by Walker Development would become part of Top Rail's debt and Walker Development could sue to collect those amounts.

■ ¶ 21 We first consider and reject the contention of Top Rail and Jenkins that the foreclosure extinguished Walker Development's deed of trust. Regardless of whether the *lien* imposed by the deed of trust was extinguished by foreclosure of the bank's senior lien, the contractual covenants in the deed of trust were not extinguished by the foreclosure. *See Schwab v. Martin,* 165 Colo. 547, 552–53, 441 P.2d 17, 19 (1968) (concluding that a provision of a deed of trust remained operative as a contract between the parties, even though the debt was extinguished by the foreclosure sale and the instrument was surrendered to the public trustee); *Foot v. Burr,* 41 Colo. 192, 197–200, 92 P. 236, 237–38 (1907) (noting that a deed of trust is both a lien and a personal contract); *see also Compass Bank v. Kone,* 134 P.3d 500, 503 (Colo.App.2006) (in a case involving secured transactions, holding that "a security interest can be created in an integrated document containing both the security agreement and other contractual terms").

■ ¶ 22 We are not persuaded by Top Rail's further argument that, because the deed of trust stated that the ability of Walker Development to pay off prior liens was to protect its security interest, it was not entitled to enforce that contractual provision once the foreclosure had extinguished Walker Development's security interest. In the deed of trust, Top Rail assigned to Walker Development the right to cure Top Rail's default in payment that resulted in the tap lien, and Top Rail covenanted to pay Walker Development the cost of such cure, with interest. Those contractual rights did not depend on the continued vitality of Walker Development's security interest in the property. *See Schwab,* 165 Colo. at 552–53, 441 P.2d at 19.

¶ 23 In granting a directed verdict for Top Rail and Jenkins on the counterclaim, the trial court accepted their argument that it is presumed that the senior water tap lien was taken into account in the bank's bid. Though the court's reasoning is unclear, this was essentially a ruling, as a matter of law, that Walker Development had no enforceable right to sue under the deed of trust to recover for its payment of that lien. This ruling was error.

¶ 24 On appeal, as in the trial court, Top Rail and Jenkins cite only to section 38–38–106, C.R.S.2013, and *Nat'l Canada Corp. v. Dikeou,* 868 P.2d 1131 (Colo.App.1993), in support of the trial court's ruling. Neither these authorities, nor any others we have found, support the proposition asserted here.

¶ 25 Section 38–38–106 sets forth the procedure for establishing a foreclosing creditor's initial bid for a foreclosure sale, and gives a foreclosing creditor certain options in formulating its bid. If the creditor has paid off liens senior to its lien, such as "[t]axes and assessments" or "[p]ermitted amounts paid on prior liens," it may include those amounts in its bid. *Id.* There is no indication here that the bank paid off the water tap lien, so this option is not at play here.

¶ 26 Under section 38–38–106(6), the bank could have bid its good faith estimate of the fair market value of the property, less the amount of the unpaid water tap lien. Or, under that same section, it could have bid only the amount of the indebtedness due under the bank's note. *Cf. Daybreak Constr. Specialties, Inc. v. Saghatoleslami,* 712 P.2d 1028, 1033–34 (Colo.App.1985) (foreclosing lender was not allowed to recover from borrower payments made on prior mechanics' liens because the lender's bid did not include such amounts and it did not pay off the liens until after it acquired title). This statute does not create any presumption as to whether the bank somehow took the lien into account in formulating its bid. On the contrary, it creates an open question—unanswered by the record—of whether the lien factored into the bid.

¶ 27 Nor does the *Dikeou* case cited by Top Rail and Jenkins support their assertion of a presumption that the water tap lien was taken into account in the bank's bid. There, the foreclosing lender sued the debtor to recover a deficiency. 868 P.2d at 1134. A

division of the Court of Appeals ruled that there was a rebuttable presumption created under those circumstances that the amount bid for the property at the foreclosure sale reflected the fair market value of the property. *Id.* Here, there is no question whether the bank or the successful bidder (who outbid the bank) bid the fair market value of the property and whether the debtor could rebut the presumption that it did so. *Dikeou* sheds no light on the question presented here.

¶ 28 In short, neither the cited authorities, nor the record, established as a matter of law whether the bank's bid took into account the amount of the water tap lien. Therefore, the trial court erred in directing a verdict against Walker Development on its counterclaim. We reverse that directed verdict, and remand for trial on the counterclaim.

## 2. Fraud Claims and Economic Loss Rule

¶ 29 Top Rail and Jenkins asserted claims for fraudulent concealment, intentional misrepresentation, and negligent misrepresentation. They alleged that when Walker and Walker Development told them that they sought a zoning change to create a conservation easement on the adjacent property, Walker and Walker Development misrepresented material facts. Top Rail and Jenkins also alleged that Walker and Walker Development concealed a material fact when Walker and Walker Development failed to tell them about the sales contract with the mining company, and the true reason for obtaining the zoning change. These claims were referred to in the trial court, and presented to the jury, as the "fraud claims." Walker and Walker Development maintain that the trial court erred in denying their motion for directed verdict on the fraud claims asserted by Top Rail and Jenkins. We agree.

¶ 30 Under the economic loss rule, a party suffering only economic loss from the breach of an express or implied contractual duty may not assert a tort claim for such a breach absent an independent duty under tort law. *Town of Alma v. AZCO Constr., Inc.,* 10 P.3d 1256, 1264 (Colo.2000).

¶ 31 "The key to determining whether the economic loss rule bars a tort claim is 'determining the source of the duty that forms the basis of the action.'" *Jorgensen v. Colo. Rural Props., LLC,* 226 P.3d 1255, 1258 (Colo.App.2010) (quoting *Town of Alma,* 10 P.3d at 1262). In making this determination, we consider three factors: (1) whether the relief sought in the tort claim is the same as the contractual relief; (2) whether there is a recognized common law duty in tort; and (3) whether the tort duty differs in any way from the contractual duty. *BRW, Inc. v. Dufficy & Sons, Inc.,* 99 P.3d 66, 74 (Colo. 2004).

¶ 32 We review de novo the court's denial of the motion for directed verdict asserted by Walker and Walker Development, and its ruling that the economic loss rule did not apply. *Jorgensen,* 226 P.3d at 1258. We conclude that the economic loss rule applies to bar the fraud claims asserted by Top Rail and Jenkins.

¶ 33 The evidence presented at trial showed that Top Rail and Jenkins sought damages representing their out-of-pocket investments and lost profits; in other words, they alleged only economic losses. *See Hamon Contractors, Inc. v. Carter & Burgess, Inc.,* 229 P.3d 282, 293 (Colo.App.2009). The alleged losses represented consequential damages, which were alleged to have been caused by the sale of the adjacent property to the mining company. *See Engeman Enterps., LLC v. Tolin Mech. Sys. Co.,* 2013 COA 34, ¶ 15, 320 P.3d 364; *Hamon Contractors,* 229 P.3d at 294. Top Rail's damages expert indicated in his testimony that it was the sale of the adjacent property to the mining company that caused Top Rail's damages.

¶ 34 Additionally, in response to a motion for summary judgment, Top Rail and Jenkins submitted an affidavit of a real estate broker. The affidavit stated that the marketability and value of the residential lots in the subdivision were adversely impacted by the mining company's purchase of the adjacent property following the rezoning to permit mining, the mining company's installation of signs that faced the subdivision and stated "Future Quarry Site," the adverse publicity that re-

sulted from the sale to the mining company, and the subsequent rezoning challenge.

¶ 35 This evidence indicates that the relief sought by Top Rail and Jenkins for the alleged fraud was the same as it sought for breach of contract and breach of the covenant of good faith and fair dealing. Thus, the first *BRW* factor weighs in favor of applying the economic loss rule.

¶ 36 In considering the second *BRW* factor, we next look at whether there is a recognized common law duty in tort to refrain from deliberate concealment or misrepresentation of material facts, and we conclude that there is. *See Hamon Contractors,* 229 P.3d at 294. However, as previous divisions of this court have concluded, and as we discuss below, not all fraud claims arise independently of contractual duties. *See Former TCHR, LLC v. First Hand Mgmt. LLC,* 2012 COA 129, ¶¶ 26–34, 317 P.3d 1226; *Hamon Contractors,* 229 P.3d at 289, 293–94.

¶ 37 As to the third *BRW* factor, we have examined whether the common law tort duty differs in any way from defendants' contractual duties, and conclude that it does not. In the complaint of Top Rail and Jenkins, alleging breach of the covenant of good faith and fair dealing, they asserted that Walker and Walker Development breached this implied duty by entering into a contract to sell adjacent property to the mining company, as well as by misrepresenting and concealing the true purpose of the zoning change application. Thus, their claim for breach of the implied duty of good faith and fair dealing duplicated their fraud claims.

¶ 38 Other divisions of this court have recognized that the implied covenant of good faith and fair dealing, which exists in every contract, may bar identical fraud claims under the economic loss rule. *See, e.g., Former TCHR,* ¶ 29 (concluding that the common law duties to refrain from fraud and to disclose material facts arose from and were expressly described by the parties' contract, or were subsumed within that contract's implied covenant of good faith and fair dealing); *Jorgensen,* 226 P.3d at 1259 n. 3 ("An example of an implied contractual duty which may bar a tort claim under the economic loss rule is the implied covenant of good faith and fair deal-

ing."); *Hamon Contractors,* 229 P.3d at 293–94 (concluding that the defendants' tort duties to refrain from deliberate concealment or misrepresentation did not differ in any way from their express and implied contractual duties, which included the implied covenant of good faith and fair dealing).

¶ 39 Considering all three factors together, we conclude that Walker and Walker Development did not owe Top Rail or Jenkins a duty independent of the parties' contract, and thus the economic loss rule barred the fraud claims against them. *See Town of Alma,* 10 P.3d at 1264; *Engeman,* ¶ 29. The trial court, therefore, erred in denying the motion for directed verdict on the fraud claims.

¶ 40 We reject the argument posed by Top Rail and Jenkins that their fraud claims against Walker individually cannot be barred by the economic loss rule because Walker was not a party to the contract. This fact is inconsequential for purposes of the economic loss rule because he is a member of Walker Development. *See Former TCHR,* ¶ 25 ("When the economic loss rule bars a claim against a corporate entity, it may also bar claims against that entity's officers and directors, even if the officers and directors were not parties to the contract at issue.").

### 3. Breach of Contract Claim

¶ 41 Walker and Walker Development contend that the trial court erred in denying their motion for directed verdict on the two breach of contract claims asserted by Top Rail and Jenkins. We decline to consider this contention.

¶ 42 Although Walker and Walker Development moved for a directed verdict on plaintiffs' fraud claims and the good faith and fair dealing claim, we can find no record of defendants ever having moved for a directed verdict on the breach of contract claims. See C.A.R. 28(k); *Madison Capital Co. v. Star Acquisition VIII,* 214 P.3d 557, 561 (Colo. App.2009) (it is not the duty of an appellate court to search the record to support party's factual allegations). In the portion of the record where Walker Development claims to

have moved for directed verdict on the breach of contract claim, its attorney expressly clarified for the court that his oral motion was being asserted as to the good faith and fair dealing claim, and only as it applied to Walker individually. In response to the court's questioning, the attorney further clarified that the motion was not directed at the fourth or fifth claims for relief, which were the breach of contract claims against Walker Development.

¶ 43 Walker and Walker Development further maintain that they preserved this issue for appeal by incorporating their arguments from their previous summary judgment motions on the contract claims into their oral motion for directed verdict. However, especially given counsel's clarification that he was not moving for directed verdict on the fourth or fifth claims for relief, his vague and incomplete references to "previous motions" and "contract-based claims" were not enough to constitute a motion for directed verdict and to preserve the issue for appeal. C.R.C.P. 50 ("A motion for a directed verdict shall state the specific grounds therefor.").

¶ 44 Failure to properly preserve an argument in a motion for directed verdict operates as an abandonment and waiver of an issue previously raised in a motion for summary judgment. *Feiger, Collison & Killmer v. Jones*, 926 P.2d 1244, 1251 (Colo. 1996); *Western Fire Truck, Inc. v. Emergency One, Inc.*, 134 P.3d 570, 577 (Colo.App. 2006). Therefore, we decline to consider this issue.

### 4. Good Faith and Fair Dealing Claim

¶ 45 Walker and Walker Development also argue that the trial court erred in denying their motion for directed verdict on plaintiffs' claim for breach of the covenant of good faith and fair dealing. We need not decide this issue. The damages awarded for this claim are duplicative of those awarded for the breach of contract claim. We have already rejected the challenge to that claim as unpreserved. Any ruling we might make as to the good faith and fair dealing claim would have no practical effect on the judgment, and is, therefore, moot. *See Robinson v. City and Cnty. of Denver*, 30 P.3d 677, 686

(Colo.App.2000) (declining to review order dismissing a claim because any damages awarded for that claim would duplicate damages previously awarded for separate claim).

### B. Prejudgment Interest

¶ 46 Because the calculation of prejudgment interest will arise on remand, we address it, and reverse the trial court's award of prejudgment interest.

¶ 47 Walker and Walker Development argue, and we agree, that the trial court erred in awarding prejudgment interest on the jury's $567,000 damages verdict, instead of the $500,000 damages award reflected in the court's final judgment. We also agree with their argument that the court should not have awarded interest on the additional amount of $5,000, which the court determined to represent losses incurred by Top Rail and Jenkins prior to the date of trial.

¶ 48 Furthermore, because the trial court awarded prejudgment interest on the jury's damages award based on the fraud claims, and we reverse the trial court's denial of the directed verdict motion on those claims, we must also reverse the court's prejudgment interest award thereon.

¶ 49 We review de novo the calculation of prejudgment interest under section 5–12–102, C.R.S.2013. *Colo. Performance Corp. v. Mariposa Assocs.*, 754 P.2d 401, 410 (Colo. App.1987); *Tripp v. Cotter Corp.*, 701 P.2d 124, 126 (Colo.App.1985).

¶ 50 We conclude that the prejudgment interest award should have been based on the $500,000 damages award in the final judgment entered by the trial court, and not on the $567,000 damages awarded by the jury. *See Butler v. Lembeck*, 182 P.3d 1185, 1194 (Colo.App.2007) (under section 5–12–102, appellant was entitled to prejudgment interest on the "entire unsatisfied amount of the judgment"); *cf. Morris v. Goodwin*, 185 P.3d 777, 779–80 (Colo.2008) (calculation of prejudgment interest under § 13–21–101, C.R.S.2013, is based on the amount of the final judgment that incorporated the trial court's reduction of damages awarded by the jury, rather than on the total amount of damages awarded by the jury). On remand,

any award of prejudgment interest should be based on the final judgment amount.

¶ 51 We also conclude that there is no record support for the court's award of interest on an additional amount of $5, 000. Top Rail and Jenkins did not request this amount in their motion for pre- and post judgment interest. In the court's order granting that motion, it stated that the damages expert's report was a projection of profit for the years 2009–2020, and that "to the extent these projections cover the years 2009–2011, they do not represent future costs, but losses incurred prior to the date of trial," which "equaled approximately $5,000." This appears to be the court's only basis for awarding interest on the additional $5,000. However, after reviewing the expert's report and his testimony, we cannot discern where this figure came from. Therefore, on remand, this additional $5,000 should be not be used as a basis for calculating prejudgment interest.

### III. Appeal of the Second Action

#### A. Claim Preclusion

¶ 52 Walker Development contends that the trial court improperly granted summary judgment for Top Rail and Jenkins in the Second Action, based on its ruling that claim preclusion barred Walker Development's claims. We agree.

¶ 53 The situation here presents a potential conflict between the common law doctrine of claim preclusion and C.R.C.P. 13, which deals with permissive and compulsory counterclaims. We must also consider the long-standing rule in Colorado that a creditor may pursue cumulative remedies to recover on a debt owed. *Mortg. Invs. Corp. v. Battle Mountain Corp.*, 70 P.3d 1176, 1184–85 (Colo.2003); *Dave Peterson Elec., Inc. v. Beach Mountain Builders, Inc.*, 167 P.3d 175, 178 (Colo.App.2007).

¶ 54 After careful review of the circumstances presented here, and of the record, we conclude that Walker Development's claims in the Second Action would have been merely permissive counterclaims in the First Action, and are not barred by claim preclusion. Key to our holding is the fact that the adjudication of the claims in the Second Action would not result in inconsistent judgments or a deprivation of rights established in the First Action.

#### 1. Standard of Review

¶ 55 We review de novo a summary judgment entered on the basis of claim preclusion. *Loveland Essential Grp., LLC v. Grommon Farms, Inc.*, 2012 COA 22, ¶ 13, 318 P.3d 6. Summary judgment is a drastic remedy and should be granted only when the pleadings and supporting documentation demonstrate that no genuine issue as to any material fact exists and the moving party is entitled to judgment as a matter of law. *West Elk Ranch, L.L.C. v. United States*, 65 P.3d 479, 481 (Colo.2002). "The nonmoving party is entitled to the benefit of all favorable inferences from the undisputed facts, and all doubts as to the existence of a triable issue of fact must be resolved against the moving party." *Id.*

#### 2. Analysis

¶ 56 "Claim preclusion ... bars 'relitigation of matters that have already been decided [in a prior proceeding] as well as matters that could have been raised in a prior proceeding but were not.'" *Loveland*, ¶ 14 (quoting *Argus Real Estate, Inc. v. E–470 Pub. Highway Auth.*, 109 P.3d 604, 608 (Colo.2005)). The doctrine is intended to promote judicial economy and to "confirm[ ] the finality of judgments" by preventing inconsistent decisions. *Argus Real Estate*, 109 P.3d at 608, 611.

¶ 57 In order for a claim in a subsequent judicial proceeding to be precluded by a previous judgment, there must be a final judgment in the first action, identity of subject matter, identity of claims for relief, and identity or privity between parties to the actions. *Id.* at 608; *Jackson v. Am. Family Mut. Ins. Co.*, 258 P.3d 328, 330–31 (Colo.App.2011).

#### a. With One Exception, the Claims in the Second Action Were Not Raised in the First Action

¶ 58 In the Second Action, Walker Development asserted two claims for relief,

which, for our purposes, contained three separate claims against Top Rail and Jenkins: (1) Based on its allegation that Top Rail had defaulted on its three promissory notes and deed of trust, Walker Development sought to recover the remaining, unpaid principal sums on those notes; (2) it sought to recover the amount it paid to remove the water district's lien; and (3) it sought to foreclose on the remaining lots subject to the deed of trust, based on Top Rail's default.

¶ 59 Walker Development later conceded that the second of these claims was barred by claim preclusion because it had already been raised as a counterclaim in the First Action. The trial court granted the motion for summary judgment asserted by Top Rail and Jenkins, holding that the doctrine of claim preclusion barred all of Walker Development's claims because they had already been raised, litigated, and addressed in the First Action.

¶ 60 However, the foreclosure claim was never raised or decided in the First Action. And the claim that Top Rail and Jenkins were in default on the three promissory notes, and thus owed Walker Development the remaining balance due on the notes, was not decided in the First Action. *See Argus Real Estate,* 109 P.3d at 608 (claim preclusion precludes the relitigation of matters that have already been decided in a prior proceeding); *O'Neill v. Simpson,* 958 P.2d 1121, 1123 n. 4 (Colo.1998) (claim preclusion bars subsequent claims based on the same claim for relief after there has been a "final judgment on the merits"). Though the notes and deed of trust were all admitted into evidence in the First Action, and various witnesses testified about them in general terms, the issues of whether Top Rail and Jenkins had, in fact, defaulted on the notes, and what amounts were still due, were never decided in that case. And while Top Rail's expert testified in the trial of the First Action that, in calculating damages, he factored in a set-off for the amounts still due on the three notes, the court declined to instruct the jury that it could consider the amounts due on the notes as a setoff against any damages awarded to Top Rail. Nor did Walker Development's counsel ask the jury in closing argu-

ment to set off the amounts due under the promissory notes against any damages awarded to Top Rail, and the jury verdict gives no indication of whether it did so. Thus, it is not clear that the damages awarded to Top Rail and Jenkins reflected any reduction for the remaining amounts due on the notes, and we cannot conclude that the issue of indebtedness on the notes was actually litigated.

¶ 61 Our analysis does not end there, however, for it is well established in Colorado that the doctrine of claim preclusion also bars claims that *could have been raised* in a prior proceeding. *Argus Real Estate,* 109 P.3d at 608; *Loveland,* ¶ 14.

> **b. The Claims Raised in the Second Action Were Permissive, Not Compulsory, Counterclaims**

¶ 62 We conclude that, though the claims raised in the Second Action could have been raised in the First Action, they were merely permissive counterclaims.

¶ 63 We reject the argument raised by Top Rail and Jenkins that Walker Development's claims were compulsory counterclaims. C.R.C.P. 13(a) requires a defendant to plead as a counterclaim "any claim ... [that] arises out of the transaction or occurrence that is the subject matter of the *opposing party's claim* ...." (Emphasis added.) The claims alleged by Top Rail and Jenkins in the First Action all involved the parties' real estate sales agreement; Walker Development's claims do not center on that agreement, but rather are based on the promissory notes and the deed of trust that secured them. Thus, Walker Development's claims did not arise out of the subject matter of the claims in the First Action, and did not need to be pleaded. See *Coplay Cement Co., Inc. v. Willis & Paul Grp.,* 983 F.2d 1435, 1441 (7th Cir.1993) ("[a] permissive counterclaim by definition arises from a different contract" than the contract originally sued upon); *cf. Dinosaur Park Inv., L.L.C. v. Tello,* 192 P.3d 513, 517 (Colo.App.2008) (a defendant's claim that "arose out of and related directly to the same contract" that the plaintiff sought to enforce was a compulsory counterclaim); *Grynberg v. Rocky Mountain Natural Gas,*

809 P.2d 1091, 1093 (Colo.App.1991) (the defendants' claims arose out of the same contract as the plaintiff's claims, and thus were compulsory counterclaims).

c. Adjudication of the Claims in the Second Action Will Not Impair the First Judgment or Result in Inconsistent Decisions

¶ 64 Next, we are compelled to address this question: Are a party's claims in a second action precluded if (1) those claims *could* have been pleaded as *permissive counterclaims* in a prior action and (2) the adjudication of the claims in the second action will not impair the first judgment or result in inconsistent decisions? We think not.

¶ 65 We are persuaded by the following language in the Restatement (Second) of Judgments § 22(2) (1982):

A defendant who may interpose a claim as a counterclaim in an action but fails to do so is precluded, after the rendition of judgment in that action, from maintaining an action on the claim if:

(a) The counterclaim is required to be interposed by a compulsory counterclaim statute or rule of court, or

(b) The relationship between the counterclaim and the plaintiff's claim is such that successful prosecution of the second action would nullify the initial judgment or would impair rights established in the initial action.

*See also* 18 James William Moore et al., *Moore's Federal Practice* § 131.21[3][c][i] (3d ed. 2012) (a claim in a second action that would have been a permissive counterclaim in a prior action is not barred by claim preclusion if the adjudication of that claim would not nullify the initial judgment and would not impair rights established by the prior judgment).

¶ 66 This rule was applied in *Mercoid Corp. v. Mid–Continent Inv. Co.*, 320 U.S. 661, 671, 64 S.Ct. 268, 88 L.Ed. 376 (1944) ("The fact that [a claim] might have been asserted as a counterclaim in the prior suit by reason of Rule 13(b) of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c, does not mean that the failure to do so

renders the prior judgment res judicata as respects it."); *Valley View Angus Ranch, Inc. v. Duke Energy Field Servs., Inc.*, 497 F.3d 1096, 1101–03 (10th Cir.2007); and numerous other cases. *See also Martino v. McDonald's Sys., Inc.*, 598 F.2d 1079, 1085 (7th Cir.1979) (concluding that res judicata preserves the integrity of judgments and protects those who rely on them, and thus the doctrine must bar a counterclaim when its adjudication would nullify rights established by the prior action).

¶ 67 We believe the reasoning of this rule is sound, and adopt it here. We believe that the rule complements settled Colorado law by addressing an aspect of claim preclusion law that has not previously been addressed. *See Lobato v. Taylor*, 70 P.3d 1152, 1166 (Colo.2003) ("if one matter could be easily relitigated with inconsistent results, judicial integrity would be compromised and the value of and respect for court rulings would be seriously devalued"); *cf. Cont'l Divide Ins. Co. v. Western Skies Management, Inc.*, 107 P.3d 1145, 1147 (Colo.App.2004) (cross-claims are precluded by claim preclusion only if they were actually raised and decided in an earlier action).

¶ 68 Allowing Walker Development's claims to be adjudicated in the Second Action will not nullify the judgment in the First Action or impair any rights established by it; nor will inconsistent judgments result. In the First Action, Top Rail and Jenkins litigated and prevailed on their contract claims arising from Walker Development's sale of adjacent property to a mining company. In the Second Action, Walker Development does not seek to relitigate any of the issues or claims decided in the First Action, nor is it attempting to nullify the first judgment. Rather, its claims concern the alleged default by Top Rail and Jenkins on their promissory notes, and it seeks to recover the remaining amounts due on those notes and to foreclose on certain property.

¶ 69 To rule otherwise would put our holding in conflict with C.R.C.P. 13(b) by *requiring* a party to plead its permissive counterclaims. Thus, although Walker Development could have raised these claims in the First Action as permissive counterclaims, we con-

clude that the claim preclusion doctrine does not now bar its claims in the Second Action.

¶ 70 Moreover, applying the doctrine of claim preclusion here would contravene the well-established principle that a creditor may pursue cumulative remedies and actions to recover from a debtor. A creditor may enforce payment of a debt by (1) foreclosing on the lien of the deed of trust securing that debt; (2) obtaining a judgment upon default of a promissory note; or (3) both. *Mortg. Invs.*, 70 P.3d at 1184–85; *Dave Peterson*, 167 P.3d at 178. While the circumstances here are unusual, in that Walker Development is seeking to pursue *both* of these remedies together in an action that was brought while it was party to another suit against Walker and Walker Development, the interest in permitting a creditor to fully recover from a debtor outweighs the application of the claim preclusion doctrine in this instance. *See Mortg. Invs.*, 70 P.3d at 1185.

¶ 71 Accordingly, we conclude that Walker Development's first and third claims asserted in the Second Action are not precluded by the judgment in the First Action, and thus the trial court erred in granting summary judgment against Walker Development based on claim preclusion.

¶ 72 Because we are remanding to the trial court for further proceedings in the First Action on Walker Development's counterclaim, the court's earlier dismissal of the counterclaim has no preclusive effect as it applies to Walker Development's second claim in the Second Action to recover the cost of retiring the water tap lien. *See Erebia v. Chrysler Plastic Prods. Corp.*, 891 F.2d 1212, 1215 (6th Cir.1989); *Jenkins v. Guilford*, 820 P.2d 1192, 1193–94 (Colo.App. 1991). Thus, because the trial court in the Second Action granted summary judgment against Walker Development on its second claim as barred by claim preclusion, we reverse that judgment. However, it is patent that Walker Development cannot pursue the same claim in both actions to recover the cost of retiring the water tap lien. Therefore, whatever disposition is made of this claim in the First Action will have preclusive effect on the same claim in the Second Action (or vice versa if the Second Action proceeds to trial earlier than retrial of the remaining issues in the First Action).

## B. C.R.C.P. 59(a) Motion

¶ 73 Finally, on cross-appeal from the Second Action, Top Rail and Jenkins argue that the trial court erred in denying their C.R.C.P. 59(a)(4) motion for cancellation of the promissory notes, release of the deed of trust, and release of the notice of lis pendens. We disagree.

¶ 74 The power to fashion equitable remedies, such as those sought here, lies within the sole discretion of the trial court, and we will not disturb such rulings absent an abuse of that discretion. *McNamara v. Mossman*, 230 P.3d 1286, 1288 (Colo.App. 2010). We also review the denial of a C.R.C.P. 59(a)(4) motion for an abuse of discretion. *Bittle v. CAM–Colo., LLC*, 2012 COA 93, ¶¶ 46–47, 318 P.3d 65; *Kaercher v. Sater*, 155 P.3d 437, 443 (Colo.App.2006). A court abuses its discretion when its decision is manifestly arbitrary, unreasonable, or unfair. *Blood v. Qwest Servs. Corp.*, 224 P.3d 301, 320 (Colo.App.2009).

¶ 75 After the court granted summary judgment in favor of Top Rail and Jenkins, they requested that the promissory notes be cancelled, and that the deed of trust and the notice of lis pendens be released unless Walker Development posted a supersedeas bond. Top Rail and Jenkins argued that the effect of the summary judgment ruling was that the debt evidenced by the promissory notes was satisfied, and hence the encumbrances should be released. The trial court denied the motion, finding that it would be inequitable to require Walker Development to post a bond because it had already filed a supersedeas bond in the First Action, and because the court found that the subject of both actions was the same. The trial court did not specifically address the request to cancel the notes and deed of trust.

¶ 76 Except as provided in section 38–35–110(2)(c), C.R.S.2013, once a notice of lis pendens is filed, it must remain in effect while an appeal remains pending in a case involving the subject property. *See Alien, Inc. v. Futterman*, 924 P.2d 1063, 1070

(Colo.App.1995). While a court may order posting of a supersedeas bond as a condition of cancelling a notice of lis pendens, the court is not required to enter such an order. *See* § 38–35–110(2)(c); *Am. Roofing Supply of Colo. Springs, Inc. v. Capps*, 890 P.2d 133, 136–37 (Colo.App.1994).

¶ 77 We discern no error in the court's determination that it would be inequitable to require Walker Development to file an additional bond on top of the $1.3 million bond that it had already posted in the First Action. That bond represents 125% of the final judgment amount from the First Action. Thus, the interests of Top Rail and Jenkins are sufficiently protected.

¶ 78 For the reasons discussed above in section III.A., we reject the further argument of Top Rail and Jenkins that the notes and deed of trust had to be released because their enforcement was barred by claim preclusion.

### IV. Attorney Fees

¶ 79 In their opening brief in the appeal of the First Action, Walker and Walker Development request a reversal of the trial court's award of attorney fees to Top Rail and Jenkins, and also request that we remand to the trial court with instructions to award to Walker and Walker Development their attorney fees incurred on appeal and in that court. Because they have provided no argument or authority in the First Action as to why they should be entitled to such relief, we decline to address these requests. *See* C.A.R. 39.5.

¶ 80 However, in their appeal of the Second Action, Walker and Walker Development have stated the legal basis for their request of appellate attorney fees, and we therefore address it. The promissory notes provide that Walker Development, as the holder of the notes, shall be entitled to collect all reasonable costs and expenses of collection and suit, including reasonable attorney fees.

¶ 81 We remand to the trial court the issue of attorney fees incurred in the appeal of the Second Action. If Walker Development prevails on its claim under one or more of the promissory notes, the court shall award its reasonable attorney fees incurred in the appeal of the Second Action.

### V. Conclusion

¶ 82 As to the First Action, we reverse the judgment in favor of Top Rail and Jenkins on their fraud claims. We also reverse the award of prejudgment interest.

¶ 83 We remand the First Action to the trial court for trial on Walker Development's counterclaim. Once that trial has been concluded, the court shall award damages and prejudgment interest, if any, in accordance with the views expressed in this opinion. In all other respects, the judgment in the First Action is affirmed.

¶ 84 We also reverse the summary judgment entered against Walker Development in the Second Action, and remand for further proceedings in that case, as described herein. We affirm the trial court's order denying the C.R.C.P. 59(a) motion.

CHIEF JUDGE LOEB and JUDGE NAVARRO concur.